## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 98-CT-00532-SCT

*JAMES WILLIAMS a/k/a JAMES A. WILLIAMS a/k/a MUGGY WILLIAMS*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/18/1997 |
| TRIAL JUDGE: | HON. JAMES W. BACKSTROM |
| COURT FROM WHICH APPEALED: | GREENE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LESLIE ROUSSEL |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | DALE HARKEY |
| NATURE OF THE CASE: | CIVIL - FELONY |
| DISPOSITION: | AFFIRMED - 10/31/2001 |
| MOTION FOR REHEARING FILED: | 11/14/2001; denied 1/17/2002 |
| MANDATE ISSUED: | 1/24/2002 |

### EN BANC.

### SMITH, JUSTICE, FOR THE COURT:

¶1. James "Muggy" Williams was tried and convicted in the Circuit Court of Greene County for the murder of Johnny Powe and was sentenced to life imprisonment. This conviction and sentence were affirmed by the Court of Appeals. This Court granted Williams's petition for writ of certiorari concerning errors in instructing the jury and the weight of the evidence. We find that the judge properly instructed the jury and further that the State presented ample evidence below to support his conviction. Thus, the judgment of the Court of Appeals is affirmed.

### FACTS

¶2. On June 7, 1996, Williams shot and killed Powe with a .32 caliber pistol. Prior to the shooting, Williams had been involved in an altercation at a convenience store with Kevin McCarty over a woman with whom both men had been involved. After this incident, Williams left with Terrence McGee and went to "Pistol Park" where they met Adrian Strickland and Kenja Blakely. McCarty returned to the vehicle he had been in and rode to the park as well. He was with Powe and Elbert Bolton.

¶3. The events at the park are in dispute. The State's witnesses testified that Powe was driving and that he stopped the vehicle close to Williams and the men with him. They testified Powe exited the vehicle with an AK-47 or SKS rifle at his side. The witnesses next stated that he approached the men, but the rifle stayed at his side and he did not threaten anyone with it. They testified that he had a heated discussion with Adrian Strickland, and it was during this that Williams put the .32 caliber pistol to Powe's temple and fired.

¶4. Williams maintains that he shot Powe in self-defense. The witnesses for him testified that the vehicle driven by Powe passed by two to three times before stopping. The defense witnesses stated that during each pass, someone in the vehicle waved the rifle and shouted threats at Williams. McGee stated that during this time, he handed Williams a pistol. The witnesses testified that once the vehicle came to a stop, Powe exited with the rifle and approached Williams. They stated that Powe raised the rifle levelly at Williams and threatened him repeatedly. The defense witnesses then testified that Powe grabbed Williams by the arm, and Williams shook him off. They stated that Powe then raised the rifle as if to shoot Williams. The witnesses testified that it was at this time that Williams drew the pistol and shot Powe.

¶5. After deliberating, the jury convicted Williams of murder, and the judge sentenced him to life in prison. His conviction was affirmed by the Court of Appeals. His petition to this Court for a writ of certiorari was granted.

## ANALYSIS

### I. WHETHER THE TRIAL COURT ERRED IN INSTRUCTING THE JURY?

¶6. Williams requested three instructions on self-defense which the court refused based on the fact that it had already accepted the State's proposed instruction which it felt adequately explained the defense to the jury.[1] Williams claims that the judge erred in refusing his requested instructions. It is well-settled that a defendant is entitled to a jury instruction on self-defense when it is warranted by the evidence. *Slater v. State*, 731 So. 2d 1115, 1118 (Miss. 1999). This Court has held:

> In a homicide case, as in other criminal cases, the court should instruct the jury as to theories and grounds of defense, justification, or excuse supported by the evidence, and a failure to do so is error requiring reversal of a judgment of conviction. Even though based on meager evidence and highly unlikely, a defendant is entitled to have every legal defense he asserts to be submitted as a factual issue for determination by the jury under proper instruction of the court. Where a defendant's proffered instruction has an evidentiary basis, properly states the law, and is the only instruction presenting his theory of the case, refusal to grant it constitutes reversible error.

*Hester v. State*, 602 So.2d 869, 872 (Miss.1992) (citations omitted).

¶7. In the case at bar, Williams's self-defense instructions had an evidentiary basis and arguably stated the law. However, we do not look at jury instructions in a vacuum. "The instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Hickombottom v. State*, 409 So. 2d 1337, 1339 (Miss. 1982) (citations omitted). Here, Williams's proposed instructions were not the only instructions presenting his theory of defense. The trial judge instructed the jury on the law of self-defense through instruction S-7. Thus, there was no error in refusing the additional instructions.

¶8. Instruction S-7 is the same self-defense instruction recommended by this Court in *Robinson v. State*, 434 So. 2d 206, 207 (Miss. 1983)[2]. This Court later overruled *Robinson*, but not the instruction it had recommended. *Flowers v. State*, 473 So. 2d 164, 165 (Miss. 1985). Until recently, the instruction recommended by *Robinson* was consistently held to be a proper instruction on self-defense. *Cohen v. State*, 732 So. 2d 867 (Miss. 1998); *Gossett v. State*, 660 So. 2d 1285, 1295 (Miss. 1995).

¶9. In *Reddix v. State*, 731 So. 2d 591, 595 (Miss. 1999), this Court ruled that the *Robinson* instruction

did not "sufficiently treat the subject of self-defense." It was argued in *Reddix* that the instruction was incomplete because it failed to alert the jury to its duty to acquit if it believed the theory of self-defense. *Id*. at 594. The Court agreed, holding:

> This instruction while fine for the State, is not sufficient as a neutral self defense instruction. It is couched in prosecutorial terms and fails to state that self defense is, in fact, a defense. In other words, the instruction failed to notify the jury it was bound to acquit Reddix if it found that he acted in self defense. Assuming, as we do that juries follow the instructions given to them by the trial court, *Collins v. State*, 594 So. 2d 29, 35 (Miss. 1992), this means the jury could not have acquitted Reddix based upon self defense because it was not informed of any law permitting them to do so.

*Reddix*, 731 So. 2d at 595.

¶10. Williams did not object to the giving of instruction S-7 at trial, and "[i]n order to preserve a jury instruction issue on appeal, a party must make a specific objection to the proposed instruction in order to allow the lower court to consider the issue." *Crawford v. State*, 787 So.2d 1236, 1244-45 (Miss. 2001) (citations omitted). However, assuming arguendo that *Reddix* requires us to review such an omission as plain error, we find no such error in the case below.

¶11. As the Court of Appeals noted in *Johnson v. State*, 749 So. 2d 369, 373 (Miss. Ct. App 1999), "[t]he problem that *Reddix* properly highlights is that the long-approved *Robinson* instruction cannot be the sole-reference to self-defense. It is quite simply a definition." However, in addition to the *Robinson* instruction, the jury below was given instruction S-1. This instruction provided the jury with the elements of murder, including that "the shooting was not in necessary self-defense." In *Cohen*, the last case that upheld the *Robinson* instruction prior to *Reddix*, this exact set of instructions was given. *Cohen*, 732 So. 2d at 872. Such additional language informed the jurors that if they found that the killing was in "necessary self-defense" then the elements of the crime were not met. They were further instructed that if the State "failed to prove any one or more of these elements beyond a reasonable doubt" then they should find Williams not guilty. Thus, the problem found in *Reddix* is cured in the case sub judice.

¶12. Williams further argues that the giving of instruction S-6 was error. Instruction S-6 stated:

> The Court instructs the Jury that where two or more persons engage in mutual combat, not in reasonably necessary self-defense but each with the intent to kill or do serious bodily injury to the other, and one or more of said persons does, in fact, kill the other, then the person or persons while acting alone or encouraging, aiding, or assisting in any manner in the killing, shall be guilty of murder.

¶13. Williams complains that there was no evidence supporting a mutual combat instruction, and further that it was an improper statement of the law as applied to the facts as it does not define self-defense and it omits the possibility of manslaughter. We agree that there were no facts to support such an instruction. However, Williams's only objection to this instruction below was that it failed to define self-defense. As noted, we do not look at jury instructions individually, but as a whole. *Gary v. State*, 760 So. 2d 743, 751 (Miss. 2000) ; *Jackson v. State*, 645 So. 2d 921, 924 (Miss. 1994); *Hickombottom,* 409 So. 2d at 1339. Self-defense was properly defined in instruction S-7, and therefore it also was not necessary that it be defined in instruction S-6.

¶14. We find no reversible error in the refusal of defense instructions, D-5, D-5-A, or D-6, and none in the

instructions that were given.

## II. WHETHER THE JURY VERDICT IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE PRODUCED AT TRIAL?

¶15. Williams claims that the evidence for self-defense was so strong that the trial court should have directed a verdict or granted a new trial. However, this Court has stated that "once the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct that the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty." *Gary*, 760 So. 2d at 749 (quoting *Ashford v. State*, 583 So. 2d 1279, 1281 (Miss. 1991)). The weight and credibility of the evidence are matters left to the jury. *Gary*, 760 So. 2d at 749 (citing *Fisher v. State*, 481 So. 2d 203, 212 (Miss. 1985)).

¶16. The issue of whether this killing was murder or self-defense was for the jury to determine. After hearing all of the facts, the jury believed the witnesses for the State and returned a verdict accordingly.

¶17. The defense presented testimony from McGee, Tracy Bolton and Blakely that Powe was the aggressor. They stated that the vehicle which Powe was in swept by them at least twice in the park, and that each time someone was yelling threats and waving the rifle at Williams. Williams testified that Powe told him that "[he] could die today." The defense further put on evidence that Powe had the rifle aimed at Williams during their confrontation and that Williams only shot him once it appeared that Powe was about to shoot him.

¶18. However, the State put on evidence from numerous witnesses that while Powe exited the vehicle with a rifle, he never aimed that rifle anywhere other than at the ground. The State's witnesses testified that Powe was arguing with Strickland and that Williams shot him from the side while this was going on. The State further presented forensic testimony that the gunshot that killed Powe was fired into his left temple from a distance of less than 1/4 of an inch.

¶19. Upon review of the evidence presented, this verdict was not unreasonable. Thus, we find that the record below adequately supports the verdict.

## CONCLUSION

¶20. We find no error below that warrants reversal. The jury instructions given adequately presented the law and the theory of the defense, and there was ample evidence to support the verdict. Thus, the judgment and sentence are affirmed.

¶21. **JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED.**

**PITTMAN, C.J., MILLS, WALLER, COBB AND EASLEY, JJ., CONCUR. BANKS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

**BANKS, PRESIDING JUSTICE, DISSENTING:**

¶22. Once again a majority of this Court finds an excuse to retreat from a previous holding guaranteeing the

right of a defendant in a criminal case to have instructions which are accurate and those which are couched in neutral terms and embodying the theory of defense, by literally inventing a distinction which is not based in either fact or law.

¶23. The fact is that in *Reddix v. State*, 731 So. 2d 591 (Miss. 1999), there was also an instruction S-1 which included an element to the effect that the actions not be taken in self-defense. In *Reddix,* S-1 defined the crime in part as being "without threat of great bodily harm to himself." R. at 21, *Reddix v. State*, 731 So. 2d 591 (Miss. 1999) (No. 96-KA-00991-SCT). Here the elements instruction says "not in necessary self-defense." There, as well as here, then, the prosection's instruction contained language requiring an absence of self-defense as an element to be shown in order to find guilt. The majority's reliance upon S-1 as distinguishing this case from *Reddix* is disingenuous. The problem identified in *Reddix*, is that, while the prosecution-oriented, expansive discussion of self-defense is not in and of itself erroneous, it does not negate the right of the defendant to have given a different self-defense instruction which specifically tells the jury, among other things, to find the defendant *not guilty* if self-defense is found. 731 So. 2d at 595.

¶24. What the majority fails to note is that the *Robinson* Court recommended an instruction to *prosecutors,* as a substitute for an instruction that *prosecutors* had been seeking and securing but which had been criticized by the court for a period of forty-seven years. 434 So. 2d at 207 (majority opinion) and 212 (Bowling, J., dissenting). The *Robinson* Court was not presented with an issue concerning the denial of a *defense* instruction on self-defense. In fact, the record of that case reflects that, in addition to the instruction offered on behalf of the State, the defendant requested and received two other instructions on the issue of self-defense, one of which is practically identical to that offered by Williams here in D-5-A. R. at 290-91, *Robinson v. State*, 434 So. 2d 206 (Miss. 1983) (No. 53,966). The case against Robinson was not submitted to the jury on the State's instructions alone. Indeed, it was Justice Bowling's view, that even the presence of the defense instructions on the subject did not sufficiently ameliorate the problem with the State's instruction. 434 So. 2d at 212. There is no evidence that the *Robinson* Court ever contemplated that the instruction that it offered as a guide to prosecutors in substitution for the prosecutorial instruction there criticized, would be used to negate the right of a defendant to proper instructions of his own.

¶25. In *Reddix*, this Court properly recognized that the instruction suggested for prosecutors was not intended to obviate the necessity of approving other properly formulated self-defense instructions offered by the defense. Indeed the instruction suggested to prosecutors is, standing alone, abstract. It is not its use that is the problem, however, it is its use as the *only* instruction on self-defense. The majority's suggestion, then, that in order to reach this issue we must resort to plain error is also disingenuous. It is not the giving of S-7 that is an issue here. Nor was it an issue in *Reddix*. The issue here and there is that no defense instruction was given completing the task of adequately instructing the jury on the question.

¶26. In the instant case, the only instruction proffered which brought the abstract concept of self-defense to the concrete based upon the evidence before the court was D-5. See, Appendix A. The other instructions proffered by the defendant, D-5-A and D-6, were also abstract, but again, that is not fatal because either or both of them would be read in conjunction with D-5 as well as S-7 and S-1. The defense instructions proffered or some combination of them edited to eliminate any redundancy within them, should have been given in this case to fully and accurately instruct the jury with regard to the theory of defense. *Leverett v. State,* 112 Miss. 394, 73 So. 273 (1916)(reversing in part because an instruction similar to D-5-A was not given).

¶27. Today's majority suggests that the State has the power to circumscribe the law given to the jury. As long as the State urges an instruction that touches upon the defense theory, it appears, the defendant has no right to have the theory more adequately put to the jury. The majority tacitly approves the very stratagem that this Court admonished against in *Wadford v. State*, 385 So. 2d 951, 954 (Miss. 1980) where, in holding that the State was required to offer an instruction negating self-defense where the evidence raised the issue, the Court cautioned that "[t]his is not to suggest that, where a defendant is, on facts in evidence, entitled to a self defense instruction, the State may preempt the subject and cut him off by obtaining an instruction of its own setting forth the essential elements of that defense."

¶28. As Justice Bowling observed in dissent in *Robinson* in response to similar contortions to "save" a conviction, our task should not be colored by our view whether the accused appellant is in fact guilty or innocent. 434 So. 2d at 211 (Bowling, J., dissenting). Although the accused is not entitled to a perfect trial he is entitled to a fair one under proper court procedures. *Id*. Because I believe that the practice here approved departs from our precedents, from the principles of fundamental fairness and due process of law under our adversary system of justice, I dissent.

### McRAE, PRESIDING JUSTICE, DISSENTING:

¶29. The majority misspeaks when it says that jury instruction S-7 has not been repudiated by this Court. In fact, we have stated unequivocally that this instruction should not be given, and would constitute reversible error. *See Reddix v. State*, 731 So.2d 591, 595 (Miss.1999) (holding identical instruction to be "not sufficient"). Williams has presented evidence to support his theory of self-defense, and he was therefore entitled to instruct the jury on this issue. Because instruction S-7 is an incomplete statement of the law, this case should be reversed and remanded for a new trial. Further, the majority reaches way out when it states that there was no evidence to support the granting of instruction S-6 regarding mutual combat, and in concluding that S-7 adequately defined self-defense when we have repeated said that it is not complete. Accordingly, I dissent.

¶30. Both sides agree that Powe exited the van with a rifle in his hands. Williams argued that the shooting was in self-defense, and he and his witnesses testified that Powe and his passengers had circled through the park two or three times while McCarty held the rifle out of the window and threatened the Williams group. They also stated that Powe continued to mount threats after exiting the van. The majority emphasizes the fact that some witnesses testified that Powe had not pointed the rifle at Williams. However, if one must wait until a rifle is pointed at them before acting in self-defense, one will probably be dead. The defense claimed that Powe grabbed Williams by the shoulder and was attempting to raise the rifle when Williams retrieved a pistol from his pocket and shot Powe in the head. Williams then fled the scene but later turned himself in to the authorities.

¶31. In instruction S-7, the trial court gave a self-defense/justifiable homicide instruction. That instruction stated:

> The court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.

Instruction S-7 is identical to the instruction proffered by this Court in **Robinson v. State**, 434 So.2d 206, 207 (Miss.1983)(criticizing a state instruction and offering an alternative). However, we unequivocally overruled **Robinson** two years later in **Flowers v. State**, 473 So.2d 164 (Miss.1985).

¶32. In **Flowers,** we absolutely condemned the previously proffered instruction. The majority errs in stating that we had overruled **Robinson**, "but not the instruction it had recommended." In fact, this Court was quite clear in condemning the **Robinson** instruction:

> It appears from our review that criticism by this Court is construed to mean this instruction is approved for continued use. We intend precisely the opposite effect, that its use be discontinued. Presently to remove any such doubt, we now condemn [the instruction] and forthrightly hold it constitutes reversible error in this case and will be so considered in future cases.

**Flowers**, 473 So. 2d at 165.

¶33. We examined this instruction again in **Reddix v. State**, 731 So.2d 591 (Miss.1999), where we held that instruction S-7, when given without other instructions, does not sufficiently define the affirmative nature of self-defense. This Court held that "the instruction failed to notify the jury it was bound to acquit Reddix if it found that he acted in self defense." **Id**. at 595. We noted that "the burden of proof rests with the prosecution to disprove that a defendant acted in necessary self-defense." **Heidel v. State**, 587 So.2d 835, 843 (Miss.1991). In **Reddix,** we reversed the conviction and remanded for a new trial, holding as follows:

> There was no instruction given that notified the jury of its duty to acquit the defendant if it believed he acted in self defense. Reddix concludes that since the State's self defense instruction did not notify the jury they were bound to acquit Reddix if they found that he acted in self defense, then the State's instruction did not sufficiently treat the subject of self defense.

731 So. 2d at 594. We agreed that such one-sided instructions fail to adequately instruct the jury of its obligation, should it find that the defendant acted in self-defense. Merely instructing the jury that, to convict, it must find that the defendant was *not* acting in self-defense is not a sufficient self-defense instruction, as it "fails to state that self-defense is, in fact, a defense." **Id.** at 595. "This instruction, **while fine for the State, is not sufficient as a neutral self-defense instruction**."**Id.** (emphasis added).

¶34. Here, Williams offered three self-defense instructions, all of which were refused by the trial court as cumulative.[3] Williams's proffered instructions would have informed the jury that self-defense is a right enjoyed by the defendant, that it was the jury's duty to find Williams not guilty if the State had failed to prove that the killing was not in self defense, or that his actions should be judged under the circumstances as they existed at the time of the shooting and from the standpoint of the defendant.

¶35. Williams was entitled to have the jury thoroughly instructed on self-defense. The defendant, in fairness, had a right to have the principles put forth in the rejected self-defense instructions exposed to the jury. This case is **not** factually distinguishable from **Reddix**, as the trial court failed to give the defense instruction. The decision of the Court of Appeals is in conflict with **Reddix v. State** and that this case must therefore be reversed and remanded for a new trial. Given the improper instructions of S-6 and S-7, along with the failure to grant the defense's proper self-defense instructions, this case should be reversed and remanded for another trial. This is clearly a situation where, had the jury been properly charged, the evidence was sufficient to support the verdict. However, under these circumstances, one must wonder if a fair trial was

given. Accordingly, I dissent.

**APPENDIX A** The trial court refused to give the following self-defense instructions:

D-5. The Court instructs the jury for the Defendant, James Williams, that the right of self-defense is one of our inalienable rights. Any person assaulted by another has the right to repel the assault with such force as may to him be apparently and reasonably necessary. He should be judged in the light of the surrounding circumstances then apparent to him, rather than in light of after developed facts. If you believe from the evidence in this case that the Defendant, James Williams, was not the aggressor, and that he was assaulted with threats and physical force by Johnny Powe, then the law of self-defense is that the Defendant then and there had the right to repel such threats and assaults by using all such force as to him was then reasonably and apparently necessary to repel such assault on him and defend himself. If no greater force was under such circumstances then used by Defendant, James Williams, it is your duty to find the Defendant, James Williams, not guilty.

D-5-A. The Court instructs the jury that the law is that a man assaulted, or about to be assaulted, with a deadly weapon is not required by the law to wait until his adversary is on equal terms with him, but may rightfully anticipate his action and kill him, when to strike in anticipation reasonably appeared to be necessary to self defense; and, unless the jury are satisfied to a moral certainty and beyond every reasonable doubt that the deceased, at the time of the killing, was not attempting to use a gun, then they must find the Defendant not guilty.

D-6. The Court instructs the jury that the Defendant was entitled to act upon appearances, and if the conduct of the deceased was such as to induce in the mind of a reasonable person, situated as he was, under all the circumstances then existing, and viewed from the standpoint of the Defendant, a fear that death or great bodily harm was about to be inflicted by the deceased on him, it does not matter if there was no such danger provided that the jury believe that the Defendant acted in self-defense from real and honest conviction, then the jury should find him "not guilty", even though they believe that at the time he was mistaken and that he was not in any great danger.

1. The refused jury instructions are included as an Appendix A.

2. The instruction stated:

The court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.

3. The instructions are contained in Appendix A.