# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00944-COA

ANTHONY LAFAYETTE A/K/A ANTHONY DEWAYNE LAFAYETTE A/K/A ANTHONY D. LAFAYETTE                                                APPELLANT

v.

STATE OF MISSISSIPPI                                                APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/22/2014 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LA DONNA C. HOLLAND |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MANSLAUGHTER AND SENTENCED TO SERVE TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY $3,488 IN RESTITUTION AND $500 TO THE CRIME VICTIMS' COMPENSATION FUND |
| DISPOSITION: | AFFIRMED – 11/24/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND JAMES, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Anthony Lafayette was convicted of manslaughter and sentenced to serve twenty years in the custody of the Mississippi Department of Corrections.[1]  He now appeals, asserting that

---

[1] Lafayette was initially convicted of manslaughter on October 28, 2009, and this Court affirmed the conviction in *Lafayette v. State*, 90 So. 3d 1246, 1249 (¶4) (Miss. Ct. App.

the State failed to prove each of the elements of manslaughter and that the verdict is against the overwhelming weight of the evidence. Lafayette also filed a pro se supplemental brief in which he contends that the jury was not properly instructed regarding self-defense.

¶2. Finding no error, we affirm.

## FACTS

¶3. Testimony presented during the trial revealed that at around 1:00 a.m. on October 20, 2007, Lafayette and his brother, Alan, were at Club Checkers, a nightclub in Bolivar County, Mississippi. An altercation erupted between Lafayette and Zerensky Webb, and after that, Earnest Booth, the victim in this case, pulled up his shirt and showed Lafayette a gun that was tucked in Booth's waistband. However, no witness testified to seeing Booth remove the gun from his waistband. Lafayette drew his gun and shot twice in the air before it jammed. Several witnesses for the defense confirmed that Lafayette had only fired two shots into the ceiling.

¶4. Timothy Mays, the club's security guard, testified that he was working at the front door when he heard two gunshots from the back of the club. Mays saw Lafayette and Booth standing on the dance floor and Lafayette holding a handgun. Mays stated that Lafayette's gun looked like it had jammed. Mays attempted to calm Lafayette and to get him to leave

2011). However, the Mississippi Supreme Court granted Lafayette's petition for a writ of certiorari, found reversible error, and remanded the case for a new trial. *Lafayette v. State*, 90 So. 3d 1215, 1219 (¶13) (Miss. 2012). After a new trial, Lafayette was convicted of heat-of-passion manslaughter, and his second conviction is the subject of this appeal.

the club peacefully. Mays testified that after Alan shoved him out of the way, he saw Lafayette shoot Booth in the face. Booth fell to the ground, dead, and Lafayette dropped his gun and left the club. Lafayette later contacted the Bolivar County Sheriff's Department and turned himself in, and he admitted that he had shot Booth in the face after Booth had revealed his gun. After a jury convicted Lafayette of manslaughter, the circuit court imposed a twenty-year sentence.

## DISCUSSION

### I. Manslaughter Conviction

¶5. Lafayette contends that the State failed to prove that he killed Booth in the heat of passion. In determining whether the State presented legally sufficient evidence to support the verdict, "the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that [the] accused committed the act charged[] and that he did so under such circumstances that every element of the offense existed[.]'" *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (citation omitted). If, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction. *Id*. The jury determines the credibility of witnesses and resolves conflicts in the evidence. *Davis v. State*, 866 So. 2d 1107, 1112 (¶17) (Miss. Ct. App. 2003) (citation omitted).

¶6. Heat-of-passion manslaughter is defined as "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous

3

weapon, without authority of law, and not in necessary self-defense . . . ." Miss. Code Ann.

§ 97-3-35 (Rev. 2014). Heat of passion has been defined as

> a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.

*Tait v. State*, 669 So. 2d 85, 89 (Miss. 1996).

¶7. Viewing the evidence in the light most favorable to the State, we find that there was sufficient evidence for the jury to find Lafayette guilty of heat-of-passion manslaughter. There was evidence that an altercation between Lafayette and Webb (and possibly Booth) occurred at the club, that a beer bottle was thrown, and that Lafayette responded by shooting his gun into the air at least twice. There was also testimony that Booth showed Lafayette the weapon that was concealed in his waistband. Mays also testified that he attempted, for several minutes, to calm Lafayette and to get him to leave the building. However, the record reveals that instead of leaving the club, Lafayette shot and killed Booth. This issue is without merit.

## II. *Weight of the Evidence*

¶8. Lafayette argues that the verdict is against the overwhelming weight of the evidence. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."

4

*Bush*, 895 So. 2d at 844 (¶18). The evidence is viewed in the light most favorable to the verdict. *Id*.

¶9.    Lafayette's chief argument is that because Booth had a gun, the jury should have found that he had acted in self-defense. However, there was no testimony that Booth made any overt act toward Lafayette other than raising his shirt to reveal the gun that was tucked into his waistband, and there was no testimony that Booth attempted to remove the gun from his waistband. Therefore, based on the evidence, which we have set forth under the previous issue, we do not find that allowing the verdict to stand would sanction an unconscionable injustice. This issue is without merit.

*III.    Jury Instructions*

¶10.    Lafayette argues that the jury was not properly instructed regarding self-defense, but he concedes that he failed to object to either instruction S-1A or S-2 when they were submitted. The law is well settled that if no contemporaneous objection is made, the error, if any, is waived. *Walker v. State*, 671 So. 2d 581, 587 (Miss. 1995). Acknowledging this, Lafayette contends that the giving of the instructions violated his fundamental right to a fair trial and due process of law and that, consequently, we may address this issue as plain error. So we will nonetheless proceed to determine whether a substantive right was affected and whether that error led to a miscarriage of justice. *Nunnery v. State*, 126 So. 3d 105, 110 (¶20) (Miss. Ct. App. 2013).

¶11.    In reviewing a challenge to jury instructions, the instructions actually given must be

5

read as a whole. *Williams v. State*, 803 So. 2d 1159, 1161 (¶7) (Miss. 2001). When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. *Id.* Lafayette argues that the instructions were inadequate because they did not inform the jury that it must have acquitted him if it found that he had acted in self-defense. Instruction S-2 does not include this specific language. However, S-1A instructed the jury that the State was required to prove that the shooting of Booth was "not in necessary self-defense" and that "if the State . . . failed to prove any one or more of the above elements beyond a reasonable doubt, then [the jury was required to] find the defendant not guilty." Furthermore, instruction D-14 instructed the jury to acquit Lafayette if the State had failed to prove beyond a reasonable doubt that he had not acted in self-defense when he shot Booth. Because it is clear that the jury was properly instructed, we do not find plain error. This issue is without merit. Accordingly, we affirm.

¶12. **THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY $3,488 IN RESTITUTION AND $500 TO THE CRIME VICTIMS' COMPENSATION FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.**