# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-00005-COA

**DEMARCUS BRYANT A/K/A DEMARCUS D. BRYANT**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

DATE OF JUDGMENT:               11/21/2019
TRIAL JUDGE:                    HON. CHARLES E. WEBSTER
COURT FROM WHICH APPEALED:      COAHOMA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         JOHN KEITH PERRY JR.
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY:  LAUREN GABRIELLE CANTRELL
DISTRICT ATTORNEY:              BRENDA FAY MITCHELL
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 06/22/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., GREENLEE AND WESTBROOKS, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     On November 20, 2019, Demarcus Bryant was found guilty of first-degree murder and sentenced to life imprisonment. Following the trial, Bryant filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The trial court denied the motion. Bryant now appeals alleging that the court erred by giving a jury instruction that included aiding and abetting. Finding no error, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2.     Around midnight on May 12, 2015, while working a night shift at Clarksdale Public Utilities, Demario Johnson exited the company's control room and walked around a roadway

to check readings on some machines. When heading back to the control room, Johnson noticed two male individuals wearing hooded sweatshirts walking nearby. One individual was wearing a dark colored sweatshirt; the other was wearing a red sweatshirt with the hood pulled over his head.

¶3. After returning to the control room, Johnson watched the surveillance camera of the two males, who were then standing under a streetlight pole beside the guard shack. Johnson then heard gunshots and ducked under his desk. Johnson called Michael Wade, his supervisor, to alert him of the gunshots. Johnson then attempted to alert Finnis "Butch" Cataledge III, the security guard on duty, but received no response. After the gunshots ceased, Johnson went to the guard shack to check on Cataledge. There, Johnson found Cataledge dead from a fatal gunshot to the head. Johnson then instructed Wade to call 911.

¶4. Investigator Rickey Burton of the Clarksdale Police Department responded to the call and recovered evidence from the scene, including shell casings from the curb near the guard shack and projectiles from inside the guard shack. Master Sergeant Heath Farish from the Mississippi Bureau of Investigations assisted with the investigation and received a tip that three people were involved.

¶5. After acquiring a search warrant for two homes, officers searched Demarcus Bryant's home on May 13, 2015. Inside the home, officers found an AR-15 rifle, a rifle case, and ownership paperwork in the back bedroom between the mattress and the box spring. Additionally, a red hooded sweatshirt was found in the living room thrown on top of a laundry basket, plus ammunition and magazines for the gun. Bryant had purchased and

registered the AR-15 six months before the murder, and it had not been reported missing or stolen.

¶6. As a result of the investigation, Bryant, Jeremy Evans, and Kentavious Nolan were charged with first-degree murder. A Coahoma County grand jury indicted all three individuals for first-degree murder in violation of Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2014) with a firearm enhancement under 97-37-37(1) (Rev. 2014).

¶7. During the trial, firearm expert Mark Boackle from the Mississippi Forensics Laboratory concluded that ten of the twelve casings recovered at the murder scene were shot from Bryant's AR-15. Additionally, Evans testified that Bryant stated at his home to Nolan and Evans that he was going to kill Cataledge for "playing him weak." During the jury-instruction conference, Bryant objected to jury instructions C-12 and C-14, which were offered in support of the State's theory that Bryant aided and abetted or acted in concert with others.[1] Following a third jury trial after two previous mistrials, Bryant was found guilty of first-degree murder and sentenced to serve life without eligibility for parole. Following the denial of Bryant's motion for a JNOV or new trial, he appealed.

## DISCUSSION

¶8. In reviewing challenges to jury instructions, "the instructions actually given must be read as a whole." *Johnson v. State*, 956 So. 2d 358, 362 (¶7) (Miss. Ct. App. 2007) (quoting *Williams v. State*, 803 So. 2d 1159, 1161 (¶7) (Miss. 2001)). "When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error

---

[1] Bryant's counsel originally objected to S-1(B) and S-5. Once accepted by the court, these instructions respectively became C-12 and C-14.

will be found." *Id.* "A trial court 'may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.'" *Id.* (quoting *Ladnier v. State*, 878 So. 2d 926, 931(¶20) (Miss. 2004)).

¶9.     Bryant argues that the court erred by allowing the two jury instructions on aiding and abetting because there was not sufficient evidence that supported such instruction. We disagree. In full, jury instruction C-12 states:

> The Defendant, DEMARCUS BRYANT, has been charged by an indictment with the crime of First-Degree Murder, a felony in the State of Mississippi.
>
> If you find from the evidence in this case beyond a reasonable doubt that:
> (1) On or about May 12, 2015, in Coahoma County, Mississippi,
> (2) the Defendant, DEMARCUS BRYANT, while aiding and abetting and/or acting in concert with others,
> (3) did unlawfully, willfully, feloniously, without authority of law and not in necessary self-defense, and with deliberate design to effect death,
> (4) kill and murder Finnis "Butch" Cataledge, III, a human being, then you shall find the Defendant, DEMARCUS BRYANT, guilty of First-Degree Murder.
>
> If the State has failed to prove any one or more of the above elements beyond a reasonable doubt then you shall find the Defendant not guilty.

Jury instruction C-14 reads:

> The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, **by acting in concert with**, or under the direction of, another person or persons in a joint effort or enterprise.
>
> If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.

4

Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.

(Emphasis added).

¶10. The jury instructions comport with prior holdings of this Court: "[I]t is well established that 'any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an "aider and abettor" and is equally guilty with the principal offender.'" *Sneed v. State*, 31 So. 3d 33, 41 (¶24) (Miss. Ct. App. 2009) (quoting *Jones v. State*, 710 So. 2d 870, 874 (¶15) (Miss. 1998)).

¶11. Bryant's counsel objected to the jury instructions stating, "It seems like their theory is directly that he was the person that committed the act, and there's been nothing from any witness indicating that it was another way." Bryant's argument neglects part of the statute and jury instructions stating that aiding and abetting can occur when one is acting in concert with others. The law does not require that a person assist *and not* be the main perpetrator; the law addresses a person who conspires or acts jointly with others, and such person may also be the principal of such crime. *See id*. at (¶¶24-25).

¶12. Our state Supreme Court has held, "Aiding and abetting is defined to be the offense

5

committed by those persons who, although not the direct perpetrators of a crime, are yet present at its commission, doing some act to render aid to the actual perpetrator. . . . And such aiding and abetting may be manifested by acts, words, signs, motions, or any conduct which unmistakably evinces a design to encourage, incite or approve of the crime, or even by being present, with the intention of giving assistance, if necessary, though such assistance may not be called into requisition." *Lynch v. State*, 877 So. 2d 1254, 1279 (¶79) (Miss. 2004).

¶13. During Byrant's trial, the jury heard testimony from Evans that the three discussed killing Cataledge at Bryant's home prior to the commission of the crime. The jury also heard testimony from Evans that Bryant said he was going to kill Cataledge for making "him weak." The State highlighted that the defense raised doubts as to the credibility of Evans attesting to whether he could actually see the shooting. As the trier of fact, the jury could decide to disbelieve Evans and conclude that Nolan fired the shots while Bryant aided and abetted him. The State also highlighted the undisputed fact that the gun was found in Bryant's home. The firearm expert testified that ten of twelve bullets matched Bryant's rifle. Therefore, there was enough evidence for the jury to decided that Bryant acted in concert with the other individuals.

¶14. We find that sufficient evidence existed to present the elements of aiding and abetting to the jury. A trial court may refuse an instruction if it incorrectly states the law or if it is without foundation in the evidence. We find that the theory of aiding and abetting was not without foundation in the law and was an issue within the realm for a jury to decide. Therefore, when reading the instructions as a whole, we find no error and affirm.

¶15.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.  EMFINGER, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**