# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-KA-01325-SCT

*ALLEN HIGGINS, a/k/a "REAMER," a/k/a "JUDE"*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/28/1994 |
| TRIAL JUDGE: | HON. JOHN M. MONTGOMERY |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RICHARD BURDINE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/17/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/7/99 |

**BEFORE SULLIVAN, P.J., BANKS AND ROBERTS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

## I.

¶1. Allen Higgins was indicted in the Circuit Court of Oktibbeha County on a charge of murder in violation of Miss. Code Ann. § 97-3-19 (1972) on August 2, 1993. A jury found Higgins guilty of murder with malice aforethought on January 28, 1994. The Circuit Court of Oktibbeha County, Honorable John M. Montgomery presiding, sentenced Higgins to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections on January 29, 1994.

¶2. Thereafter, Higgins filed a motion for a new trial, which was denied on February 4, 1994. Higgins later filed a motion for out of time appeal, which was granted on November 7, 1996. Higgins assigns three errors on this appeal.

## II.

¶3. The facts in this case arise out of an alleged attack on the victim and the fatal shooting of the victim inside the Rockhill Café in Oktibbeha County on January 29, 1993. Allen Higgins admits shooting the victim but denies beating him. Higgins claims he shot the victim in self defense.

¶4. At trial the State offered the testimony of nine witnesses, including one eyewitness to the shooting. The Defense offered the testimony of eight witnesses, including the defendant Higgins.

¶5. Betty Scales, manager of the Rockhill Café, testified she observed W. C. Boudery and Bruce Morris arguing during a pool game. She also testified someone hit Boudery in the head with a bottle, and he fell across a table. Scales further testified three or four men began beating Boudery and someone broke a gin bottle over Boudery's head. Scales also stated she heard three gun shots, the first softer than the later two.

¶6. David Williams claimed he witnessed both the beating and the shooting. He testified Boudery was hit in the head with a gin bottle and beaten by four or five men. Williams identified Higgins as the one who pointed a gun at Boudery and shot him. Williams recalled hearing several gunshots, the first a "light shot" followed by two "heavy shots." Williams stated he believed the light shot came from a small gun. Williams identified a gun found near the body of the victim (State's Exhibit 4) as a small thirty eight caliber pistol. Williams identified the gun he saw Higgins use (State's Exhibit 3) as a forty five caliber pistol.

¶7. Ruth Ann Scales, the mother of one of Boudery's children, testified Boudery told her he felt he needed to take his gun with him that night. Scales identified Higgins as the man she had seen near the Rockhill Café with a black gun and bullets prior to the shooting. Scales testified that after the shooting she asked Higgins why he shot Boudery and Higgins replied he would shoot her too if she did not shut her mouth.

¶8. Deputy Gordon Sharp testified that when he arrived on the scene Higgins approached him and admitted "I shot him." Sharp further testified that Higgins turned over the gun he had used; the officer identified the gun (State's Exhibit 3) as the same gun Higgins gave him in the Rockhill Café parking lot that night.

¶9. Officer James Lindsey testified as to the injuries he observed on Boudery's body. Lindsey stated it appeared a bullet entered under the victim's armpit, traveled into the chest area and exited through the center of the back. Lindsey also observed a small cut on the upper part of the victim's left eye and a more serious laceration on the victim's temple.

¶10. In addition, Lindsey testified concerning the evidence of gunfire at the café. He explained that two forty five caliber projectiles were retrieved, one from the wall and one from the couch; and that two forty five casings were recovered, one from the middle of the pool table and one lying on the floor near the pool table. Lindsey further testified that a small bullet hole was found in the ceiling which appeared to have been caused by a small caliber gun. The officer also stated he found a broken gin bottle against a wall.

¶11. Medical Examiner Orville Musgrove confirmed that Boudery died as a result of a gunshot wound under his right arm and that the bullet exited the body underneath the left shoulder blade.

¶12. After the State rested, Higgins moved for a directed verdict on the grounds that (1) there was no evidence of malice aforethought concerning the charge of murder, and (2) the testimony of the State's chief witness Williams conflicted with the factual evidence presented. The court denied Higgins' motion for a directed verdict, stating malice could be presumed in the use of a deadly weapon. The court also stated that since Williams had testified he saw Higgins shoot Boudery, the State had made a prima facie case.

¶13. Higgins testified on his own behalf. He claimed he was talking to Willie Johnson when Boudery walked up behind him. Higgins testified that when he turned around to speak, Boudery had a gun pointed in his face and said, "You little mother fucker." Higgins testified he ducked down, pulled his gun and fired without taking time to aim. Higgins insisted Boudery shot first and he shot Boudery in self defense. Higgins claimed he did not see anyone beating Boudery prior to the shooting.

### III.

### WHETHER THE TRIAL COURT COMMITTED ERROR IN NOT GRANTING THE INSTRUCTIONS REQUESTED BY THE DEFENDANT?

¶14. In his first assignment of error, Higgins claims the trial judge committed reversible error when he denied proposed jury instructions D-2, D-3, D-4, D-8, D-9 and D-12, all of which advanced the defendant's theory of self defense. The trial court reasoned it denied these instructions because they were either repetitious or constituted a rehashing of previously granted instructions.

¶15. The trial court enjoys considerable discretion regarding the form and substance of jury instructions. *Splain v. Hines*, 609 So. 2d 1234, 1239 (Miss. 1992).

¶16. This state's law on jury instructions has been summarized as follows:

> Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that *the court may refuse an instruction which* incorrectly states the law, *is fairly covered elsewhere in the instructions*, or is without foundation in the evidence.

*Jackson v. State*, 645 So. 2d 921, 924 (Miss. 1994) (emphasis added) (citations omitted). We have also held a court's jury instructions "(will not warrant reversal if the jury was fully and fairly instructed by other instructions.)" *Williams v. State*, 667 So. 2d 15, 24 (Miss. 1996) (citations omitted).

¶17. In the case *sub judice*, the court granted four self defense instructions, S-4, D-1, D-7, and D-11. Instruction S-4 is the verbatim self defense instruction recommended to prosecutors by this Court in *Robinson v. State*, 434 So. 2d 206, 207 (Miss. 1983) (criticizing a state instruction and suggesting alternate language for the state), *overruled by Flowers v. State*, 473 So. 2d 164, 165 (Miss. 1985) (condemning the instruction previously criticized in *Robinson* and overruling all cases that approved it). The *Robinson* sets out the theory of self defense as follows:

> The court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.

*Robinson*, 434 So. 2d at 207.

¶18. The trial court also granted three additional self defense instructions requested by the defense.

Instruction D-1 provided:

> The court instructs the jury that the defendant having raised the claim of self-defense, the burden is on the State to prove beyond a reasonable doubt that the Defendant did not act in the necessary self-defense, and unless the State meets this burden and proves to you beyond a reasonable doubt that Allen Higgins was not acting in necessary self-defense, then it is your sworn duty to find the Defendant not guilty.

Instruction D-7 read:

> The Court instructs the jury that in this State, no one is required to flee in the face of threatened assault, but may stand his ground, and in a proper case may anticipate an attack and, if reasonably necessary, slay his adversary to save his own life.

Instruction D-11 provided:

> The Defendant, Allen Higgins, asserts that the killing of W.C. Boudery was a justifiable homicide because Defendant's act which caused the death of W.C. Boudery was committed in the lawful defense of one's own person or the defense of another human being where there is reasonable ground to apprehend a great personal injury and there is eminent danger of such design being accomplished.
>
> The killing of a human being is justified if the Defendant was acting in self defense because he had reasonable grounds to fear that he would be shot and killed or another human being would be shot and killed and that there was imminent danger of the injury occurring.
>
> If you find that this homicide is justifiable then it is your sworn duty to find the Defendant not guilty.

¶19. In the instant case, the trial judge determined instructions D-2, D-3, D-4, D-8 and D-9 were repetitious with instruction S-4. The trial judge also determined D-12 was repetitious with S-4 and D-11. "[W]here one jury instruction adequately covers the defendant's theory of self-defense, there is no error in refusal of a second or redundant instruction." *Cook v. State*, 467 So. 2d 203, 210 (Miss. 1985) (citing *Evans v. State*, 457 So.2d 957, 959 (Miss.1984)). After reviewing the instructions in this case as a whole, we are of the opinion that the jury was adequately instructed on the defendant's theory of self defense. Therefore, we conclude the trial judge was within his discretion when he refused instructions D-2, D-3, D-4, D-8, D-9 and D-12.

## WHETHER THE TRIAL COURT COMMITTED ERROR IN FAILING TO GRANT A DIRECTED VERDICT ON THE CHARGE OF MURDER?

¶20. Higgins next assigns as error the trial court's failure to grant a directed verdict at the conclusion of the State's case in chief. Specifically, he complains malice aforethought was not proven and the testimony of the State's eyewitness Williams conflicted with the factual evidence presented by the State. Higgins also cites as error the trial court's failure to grant instruction D-0.

¶21. The State claims Higgins is procedurally barred from seeking review of the legal sufficiency of the evidence at the close of the State's case in chief because he proceeded to put on his own defense. Alternatively, the State claims Higgins' challenge as to the legal sufficiency of the evidence must fail.

¶22. A criminal defendant has several procedural vehicles available to him for challenging the sufficiency of the case for the prosecution-- the motion for directed verdict made at the end of the case for the prosecution, the request for a peremptory instruction at the end of all of the evidence or the motion for a directed verdict at that point, or finally, a motion for judgment of acquittal notwithstanding the verdict. See *Wetz v. State*, 503 So. 2d 803, 808 n.3 (Miss. 1987). Each requires that the court consider all of the evidence before it at the time the motion is considered. *Id.* When the sufficiency of the evidence is challenged on appeal, this Court reviews the circuit court's ruling on the last occasion when the sufficiency of the evidence was challenged before the trial court. *Id.*

¶23. In the case *sub judice*, Higgins moved for a directed verdict at the close of the prosecution's case in chief, and his motion was denied. Thereafter, Higgins proceeded to put on his own defense. Consequently, Higgins is procedurally barred from seeking review of the legal sufficiency of the State's evidence at the time his motion was considered (i.e., at the close of the prosecution's case in chief). *Whitehurst v. State*, 540 So. 2d 1319, 1327 (Miss. 1989). However, "[b]y offering evidence of his own, the defendant in no way waive[d] the right to challenge the sufficiency or weight of the evidence in the event of an adverse jury verdict." *Wetz*, 503 So. 2d at 808 n.3.

¶24. In the case at bar, Higgins failed to renew his directed verdict motion at the close of all the evidence. However, Higgins requested a peremptory instruction on the issue of murder with Instruction D-13 and this constituted a renewal of his motion for directed verdict.

¶25. Instruction D-13 reads: "The Court instructs the jury to find the defendant, Allen Higgins, not guilty." We find this instruction properly renewed Higgins' claim that the evidence against him was legally insufficient. Furthermore, Higgins again challenged the sufficiency of the evidence in his motion for a new trial. Consequently, Higgins has properly placed the sufficiency of *all* the State's evidence before this Court for consideration.

¶26. Higgins argues there was insufficient evidence of malice aforethought to support his murder conviction. Malice or intent, as a matter of law, may be proved or inferred from the use of a deadly weapon. *Fairchild v. State*, 459 So. 2d 793, 802 (Miss. 1984); *Shields v. State*, 244 Miss. 543, 548-49, 144 So. 2d 786, 788 (1962) (overruled on other grounds by *Flowers v. State*, 473 So. 2d 164 (Miss. 1985)); *Smith v. State*, 205 Miss. 283, 294, 38 So. 2d 725 (1949).

¶27. Higgins admits using a gun to kill the deceased. While Higgins testified he shot justifiably in self-defense, there was sufficient evidence before the jury to support a different conclusion. This evidence is more fully discussed below.

¶28. Under the disputed and contradictory testimony in the instant case, the issue of malice was properly left for the jury's consideration. See *Cromeans v. State*, 261 So.2d 453, 457 (Miss.1972). It was the jury's verdict that Higgins acted with malice aforethought when he shot the deceased, and we cannot say the jury was unjustified in finding Higgins guilty as charged.

¶29. Higgins also complains the testimony of the State's eyewitness Williams conflicted with the factual evidence presented by the State. "Matters regarding the weight and credibility to be accorded evidence are to be resolved by the jury." *Fisher v. State*, 481 So.2d 203, 212 (Miss.1985) (citations omitted).

¶30. Higgins, by targeting the sufficiency of the evidence, seeks reversal and discharge. Once the jury has

returned a verdict of guilty in a criminal case, this Court is not at liberty to direct that the defendant be discharged "short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty."*May v. State*, 460 So.2d 778, 781 (Miss. 1984). Applying this standard to the evidence in the record, we find no reason to upset the jury's verdict finding the defendant guilty of murder with malice aforethought.

¶31. Finally, Higgins cites as error the trial court's failure to grant Instruction D-0 which reads:

> The court instructs the Jury that you may not find Allen Higgins guilty of murder but must limit yourselves to determining whether the slaying of W.C. Boudery was manslaughter or justifiable homicide.

Based on the evidence in the record and law discussed above, we find no error with the trial court's decision to refuse Instruction D-0.

### WHETHER THE VERDICT OF THE JURY IS CONTRARY TO THE LAW AND AGAINST THE OVERWHELMING WEIGHT OF EVIDENCE?

¶32. Higgins argues the jury's verdict is contrary to the overwhelming weight of evidence presented at trial. Higgins claims the evidence established the shooting could not have occurred as Williams, the State's eyewitness testified it did. Higgins also claims the evidence further established there was no malice in connection with the shooting and Higgins shot in self defense. ¶33. This Court's stringent standard of appellate review for challenges to the legal sufficiency of evidence was articulated in *Garrett v. State*, 549 So.2d 1325, 1331 (Miss.1989) (quoting *McFee v. State*, 511 So.2d 130, 133-34 (Miss.1987)):

> When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence--not just that supporting the case for the prosecution--in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.

¶34. While Higgins testified he shot Boudery justifiably in self-defense, reasonable and fairminded jurors in the exercise of impartial judgment could have reached a different conclusion. The evidence favorable to the State's theory of the case demonstrates that Higgins was seen with the murder weapon and he was seen shooting the victim. No witness claimed to see the victim aim his gun at Higgins. More than one witness testified the victim was stretched across a table and beaten by several men. Higgins was seen hitting the victim over the head with a gin bottle. A police officer observed lacerations on the left temple of the victim's body. The medical examiner testified that the trajectory of the bullet which killed Boudery would be determined by the position of the gun and the position of the body. Testimony was offered that the fatal shot came not from the front but from the side, explaining the entrance wound in the axillary of the body.

¶35. It is enough to say the evidence created a factual issue with respect to whether the killing, which was admitted, was either murder or justifiable homicide. See *Harris v. State*, 532 So.2d 602, 603-05 (Miss.1988); *Griffin v. State*, 495 So.2d 1352, 1354 (Miss.1986). Accepting the testimony of the State's witnesses as true and considering all the evidence in the light most favorable to the prosecution's theory of the case, this Court concludes there is sufficient evidence in the record from which a jury could find beyond a reasonable doubt the killing of Boudery was malicious and was not done in necessary self-defense. "[T]he jury is the trier of fact and if their verdict is supported by the evidence, we will not disturb it." *Pace v. State*, 473 So. 2d 167, 169 (Miss. 1985).

## IV.

¶36. The trial court did not err in refusing to give repetitious instructions, the trial court was within its discretion in denying the defendant's motion for directed verdict, and the jury's verdict was not against the overwhelming weight of the evidence.

¶37. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**