# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CT-01059-SCT

*ANTWON ELLIS a/k/a ANTWON LESHAY ELLIS*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/09/1999 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAN W. DUGGAN, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 04/26/2001 |
| MOTION FOR REHEARING FILED: | 5/25/2001; denied 8/2/2001 |
| MANDATE ISSUED: | 8/9/2001 |

### EN BANC.

### MILLS, JUSTICE, FOR THE COURT:

¶1. In 1999, Antwon Ellis was convicted by a jury in the Hinds County Circuit Court of the 1997 murder of a store owner. He was sentenced to life in prison without parole. On appeal, his conviction and sentence were affirmed by the Court of Appeals. We, in turn, granted certiorari and now reverse and remand for a new trial.

### FACTS

¶2. Antwon Ellis was convicted largely on the testimony of his alleged accomplice, Kendaryll Robinson. Robinson testified that on July 25, 1997, he, Ellis and three others drove to a club on Medgar Evers Boulevard and parked behind it. Robinson testified that they went there for the purpose of robbing a pair of nearby stores and that Ellis told them what to do. Robinson stated that while acting as look-out for Ellis, he heard a gun shot and saw a man fall to the ground. Robinson testified that he looked up to see Ellis, armed with a nine-millimeter pistol, shooting at the victim.

¶3. On cross-examination, Robinson admitted that he had lied when he first told police that he had not seen anyone fire shots. Counsel for Ellis offered a jury instruction (D-5) on impeachment but the prosecutor objected on grounds that the proposed instruction was poorly worded and confusing. The trial court sustained the objection and gave its own instruction (C-1) on the credibility of accomplice testimony.

### LAW AND ANALYSIS

¶4. The proposed instruction (D-5) offered by Ellis read as follows:

The testimony of a witness or witnesses may be discredited or impeached by showing that on a prior occasion they may have made a statement which is now inconsistent with or contradictory to their testimony in this case. In order to have this effect, the inconsistent or contradictory prior statement must involve matter which is material to the issues in this case.

The prior statement of the witness or witnesses can be considered by you only for the purpose of determining the weight or believability that you give to the testimony of the witness or witnesses that made them. You may not consider the prior statement as proving the guilt or innocence of the defendant.

After rejecting this instruction, the trial court instructed the jury as follows with C-1:

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness' intelligence, state of mind, demeanor and manner while on the stand. Consider the witness' ability to observe the matters as to which he or she has testified, and whether he or she impresses you as having an accurate recollection of these matters. Consider the extent to which he or she has testified, and whether he or she impresses you as having an accurate recollection of these matters. Consider the extent to which it is contradicted by other evidence in the case. Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood. After making your own judgment, you will give the testimony of each witness such credibility, if any, as you may think it deserves.

¶5. In reviewing jury instructions on appeal, this Court has held:

Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence.

*Higgins v. State*, 725 So.2d 220, 223 (Miss.1998). A trial judge is under no obligation to grant redundant instructions. *Bell v. State*, 725 So.2d 836, 849 (Miss. 1998). The refusal to grant an instruction which is similar to one already given does not constitute reversible error. *Laney v. State*, 486 So.2d 1242, 1246 (Miss. 1986).

¶6. Ellis cites *Ferrill v. State*, 643 So.2d 501 (Miss. 1994) and *McGee v. State*, 608 So.2d 1129 (Miss. 1992) for the proposition that a defendant is entitled to a cautionary instruction on the testimony given by an impeached witness. In each of these cases, the State's chief witness had given a prior inconsistent statement that directly contradicted his trial testimony against the defendant. In *Hill v. Dunaway*, 487 So.2d 807,

809 (Miss.1986), we held:

> The refusal of a timely requested and correctly phrased jury instruction on a genuine issue of material fact is proper, only if the trial court--and this Court on appeal--can say, taking the evidence in the light most favorable to the party requesting the instruction, and considering all reasonable favorable inferences which may be drawn from the evidence in favor of the requesting party, that no hypothetical, reasonable jury could find the facts in accordance with the theory of the requested instruction.

(quoted in *McGee v. State*, 608 So.2d at 1134).

¶7. In his first statement to police, Robinson said that he was present at the crime scene but did not see anything. At trial, Robinson testified that he heard the shots; saw someone fall to the ground; and then saw Ellis with the gun. Robinson admitted on cross-examination that he lied to police initially and was testifying pursuant to a plea-bargain agreement.

> Q. At that particular time Detective Youngblood asked you did you see anybody do any shooting and you said no, sir; isn't that right?
>
> A. Yes, sir.
>
> Q. All right. And then you came back at 3:25 p.m. on that same afternoon and you were asked the question what did you see, and at that time particular time you told them you saw Antwon shoot somebody; isn't that right?
>
> A. Yes, sir.
>
> Q. So you lied to the police officers the first time you spoke to them; isn't that right?
>
> A. Yes, sir.

Robinson's testimony was directly contradicted and therefore was substantially impeached.

¶8. Accomplice testimony is traditionally viewed with great caution and suspicion. *Derden v. State*, 522 So.2d 752, 754 (Miss.1988). This Court has held, however, that "the uncorroborated testimony of an accomplice may be sufficient to convict an accused" but that a cautionary instruction is warranted where the testimony is "unreasonable, self contradictory or substantially impeached." *Ballenger v. State*, 667 So.2d 1242, 1253 (Miss.1995). While testifying before the jury, Robinson admitted that he lied when he gave his first statement to police. Ellis was therefore entitled to an impeachment instruction. In *Ferrill*, the following instruction was refused at trial; however, we held that it should have been given:

> The Court instructs the jury that the testimony of a witness may be discredited or impeached by showing that on a prior occasion they have made a statement which is inconsistant [sic] or contradictory statement must involve a matter which is material to the issues in this case.
>
> A prior statement of the witness or witnesses can be considered by you only for the purpose of determining the weight or believeability [sic] that you give to the testimony of the witness or witnesses that made them. You may not consider the prior statements as proving guilt or innocence of the accused.

*Ferrill,* 643 So.2d at 504-05.

¶9. The State contends that the instruction offered by Ellis singled out the testimony of Robinson and would have been an impermissible comment by the trial court on the evidence. *See Foster v. State,* 508 So.2d 1111, 1118-19 (Miss. 1987). In *Foster,* a similar instruction was refused but there was no showing that the State's witness had directly contradicted his courtroom testimony on a prior occasion. Instead, the defense sought to impeach the witness' motive for revealing a jailhouse confession. In the present case, however, Robinson directly contradicted his prior statement. Ellis was entitled to an instruction similar to the one given in *Ferrill*. The refusal to grant such instruction was a fatal error. The appellate opinion in this case is in conflict with our decisions in both *McGee* and *Ferrill*. The conviction must therefore be reversed and remanded for a new trial.

## CONCLUSION

¶10. For these reasons, the judgments of the Court of Appeals and the Hinds County Circuit Court are reversed, and this case is remanded to the Hinds County Circuit Court for a new trial consistent with this opinion.

¶11. **REVERSED AND REMANDED.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., AND DIAZ, J., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, COBB AND EASLEY, JJ.**

**SMITH, JUSTICE, DISSENTING:**

¶12. In ***Bell v. State***, 725 So.2d 836 (Miss. 1998) this Court held that a trial judge is not obligated to grant redundant instructions. *Id*. at 849. Also, in ***Higgins v. State***, 725 So.2d 220 (Miss. 1998), that a trial court, among other things, "may refuse an instruction which incorrectly states that law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence." *Id*. at 223. That is exactly the issue in this case: a redundant jury instruction that was fairly covered by another instruction. The majority opines that because the trial court refused to grant jury instruction D-5, it committed error and reverses on those grounds. In my view, the trial court did not commit error in refusing jury instruction D-5 because the court had already granted instruction C-1. Accordingly, I respectfully dissent.

¶13. In large part, the jury instruction at issue dealt with the contradictory accomplice testimony of Ellis's friend, Kendaryll Robinson. Robinson testified that he, Ellis, and three others intended to rob some businesses on Medgar Evers Boulevard. On the witness stand, Robinson testified that while he was parked behind a store waiting for Ellis to return with stolen cash, he heard a gun shot, saw a man fall down, and saw Ellis shoot the victim with a handgun. However, that is not what Robinson initially told the police. During cross-examination, Robinson confessed that when he was first questioned by the police, he initially told them that he had not seen anyone fire any shots. Because of this discrepancy, the defense sought a jury instruction reflecting Robinson's prior inconsistent statement.

¶14. The law is clear regarding jury instructions. The refusal of a jury instruction similar to another instruction is not error. *Laney v. State*, 486 So.2d 1242, 1246 (Miss. 1986). Additionally, it is not error for the trial court to refuse a requested instruction, even though it correctly states the law, which merely

clarifies another instruction. *Davis v. State*, 568 So. 2d 277, 280 (Miss. 1990).

¶15. The way in which instruction D-5 was phrased suggested that the trial court considered Robinson's testimony to be inconsistent and contradictory, therefore suggesting that his testimony be discredited and not worthy of belief. A trial court does not err in denying a proposed instruction which amounts to a comment by the court on the weight and worth of particular testimony. *Foster v. State*, 508 So.2d 1111, 1118-19 (Miss. 1987). The more appropriate jury instruction was instruction C-1 because it adequately and fairly instructed the jurors without casting weight on any testimony given at trial. As referenced above, instruction C-1 instructed the jurors to scrutinize carefully all the testimony given by each witness and implored each juror to make his or her own judgment based upon the testimony of each witness.

¶16. The trial court committed no error when it decided not to grant jury instruction D-5, which was both a redundant instruction and an instruction that was fairly covered elsewhere by jury instruction C-1.

¶17. For this reason, I respectfully dissent.

**WALLER, COBB AND EASLEY, JJ., JOIN THIS OPINION.**