ROBERTS, J., for the Court.
¶ 1. This is a corrected opinion. The mandate in the opinion has been corrected to change the sentence from life in the custody of the Mississippi Department of Corrections (MDOC) without possibility of parole to life in the custody of the MDOC. The remainder of the opinion unchanged.
¶ 2. A jury sitting before the Oktibbeha County Circuit Court found Thomas Terrell Smith guilty of murder. The circuit court sentenced Smith to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC) -without the possibility of parole. Following an unsuccessful post-trial motion for a new trial, Smith appeals. Smith claims the circuit court erred when it denied his proposed jury instructions on the theories of heat-of-passion manslaughter, manslaughter following the decedent’s commission of a felony, and self-defense. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 3. In the early months of 2004, Smith was living with his aunt, Minnie Bell, who suffered from terminal cancer. Minnie’s adult daughter, Latoya Bell, also lived with Minnie. Latoya had children with a man named Terry Tate. In late January 2004, Terry visited Latoya at Minnie’s house. During that visit, Terry became violent with Latoya. Smith and Latoya’s brother, Quentin Bell, restrained Terry. Terry left Minnie’s house after someone contacted the police department.
¶ 4. Two days later, Smith helped another cousin, Monique Bell, who was involved in a separate domestic violence altercation. Monique contacted Smith because she had been arguing with her boyfriend, and she needed someone to pick her up from “Spann’s Place” in Clay County, Mississippi. Smith and Minnie’s boyfriend, Harvey Cooper, went to pick up Monique. When Smith and Cooper arrived, Monique told them that she and her boyfriend had resolved their differences and that she no longer needed a ride home.
¶ 5. Terry was also at Spann’s Place. As Smith was leaving, Terry pushed Smith outside and hit him with a pistol. Eddie Davis, a friend of Terry’s, later testified that Terry said to Smith, “do you believe that I’ll blow your brain out? Don’t never get into me and my old lady’s affair again.” Monique corroborated Davis’s version of events. That is, she also heard Terry warn Smith that he should not interfere with his violent treatment of Latoya.
¶ 6. The next morning, Smith went to a restaurant in Clay County and talked to Desmond Logan about getting a pistol. According to Smith, he was concerned about Terry. Logan gave Smith a pistol. Later that day, Terry drove by the same restaurant. By all accounts, Terry asked people at the restaurant whether they had seen someone. Some witnesses testified that Terry asked about Smith. Others testified that Terry asked about his own cousin.
¶ 7. Seconds later, Smith pulled up, got out of his car, and walked toward Terry’s car, where Terry sat in the driver’s seat. Again, witnesses’ testimonies varied. According to Smith, as he approached Terry’s window, he saw Terry reach for something. John Cunningham, who happened *172 to be standing outside the restaurant at the time, testified that he did not see Terry make any threatening movements toward Smith. However, it is undisputed that Smith drew his pistol and shot Terry. Smith’s shot traveled through Terry’s arm and into his chest cavity. Terry’s wound was fatal. A search of Terry’s car later revealed an unloaded pistol in Terry’s glove compartment.
¶ 8. As mentioned, Smith went to trial. During the jury instruction conference, Smith unsuccessfully requested several jury instructions. In particular, Smith’s proposed jury instruction, identified as D-14 at trial, would have instructed the jury on heat-of-passion manslaughter. Three jury instructions, D-13, D-16, and D-17, would have instructed the jury on manslaughter following the decedent’s commission of a felony. Finally, Smith submitted seven proposed self-defense jury instructions identified at trial as follows: D-4, D-7, D-15, D-18, D-19, D-20, and D-23. The circuit court refused those instructions. Smith appeals his conviction. According to Smith, the circuit court erred when it denied his jury instructions.
STANDARD OF REVIEW
¶ 9. A trial court has “considerable discretion regarding the form and substance of jury instructions.” Higgins v. State, 725 So.2d 220, 223(¶ 15) (Miss.1998). “A defendant is entitled to have jury instructions given which present his theory of the case.” Id. at (¶ 16). “[H]owever, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is fairly covered elsewhere in the instructions, or is without foundation in the evidence.” Id. Stated somewhat differently, “all instructions are to be read together[,] and if the jury is fully and fairly instructed by other instructions[,] the refusal of any similar instruction does not constitute reversible error.” Laney v. State, 486 So.2d 1242, 1246 (Miss.1986).
ANALYSIS
I. HEAT-OF-PASSION MANSLAUGHTER INSTRUCTION
¶ 10. Smith claims that by denying his heaUof-passion manslaughter instruction, the circuit court deprived him of his fundamental right to present his theory of the case. According to Smith, there was sufficient evidence to justify his instruction. Smith relies on the following: (1) the night before Smith shot Terry, Terry hit Smith in the head with a pistol; (2) Terry threatened Smith’s life at approximately the same time he hit Smith; (3) after Smith acquired a pistol, he did not look for Terry; and (4) Terry drove by the restaurant and, according to some witnesses, tried to find Smith. Smith concludes that a jury could have found that, due to Terry’s threat, Smith was afraid of Terry. According to Smith, the jury could have found that he had sufficient provocation to shoot Terry.
1111. Heat-of-passion manslaughter is “[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense....” Miss.Code Ann. § 97-3-35 (Rev.2006). Heat of passion has been defined as “[a] state of violent and uncontrollable rage engendered by a blow or some other provocation given” and “[pfession or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time.” Cooper v. State, 977 So.2d 1220, 1223(¶ 11) (Miss.Ct.App.2007) (emphasis added).
¶ 12. We cannot find that the circuit court abused its considerable discretion *173 when it declined to grant the instruction at issue. There was no evidentiary basis for the instruction. Smith was not entitled to claim that he was still in the heat of passion over events that happened the day before. Additionally, as the State notes, the jury had the option of finding Smith guilty of manslaughter.
¶ 13. The circuit court granted instruction C-38, which instructed the jury as follows:
if a person kills another under the actual bona fide, [sic] belief that such a killing is necessary in order to protect himself from great bodily harm or death but that such belief is not reasonable under the circumstances, then there is no malice aforethought and the killing is-not a murder, but at most is the crime of manslaughter.
Instruction C-38 has been described by some as an “imperfect self-defense instruction.” Obviously there are subtle differences in instruction C-38 and proposed instruction D-14. For example, instruction C-38 did not mention the phrase “heat of passion.” Even so, there can be no doubt that the jury had the option of finding Smith guilty of manslaughter upon a finding that Smith killed Terry under the unreasonable impression that Terry presented a threat of great bodily harm or death. Although the words “heat of passion” were not included in instruction C-38, the jury clearly had the option of finding Smith guilty of manslaughter. Accordingly, we find no merit to this issue.
II. SLAYING FOLLOWING DECEDENT’S COMMISSION OF A FELONY
¶ 14. Next, Smith claims the circuit court erred when it did not grant his proposed instructions that would have allowed the jury to find him guilty of manslaughter. Smith draws attention to the language of Mississippi Code Annotated section 97-3-31 (Rev.2006), which states that “[e]very person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter.”
¶ 15. Smith’s argument under this issue is particularly brief. According to Smith, he “attempted to present these instructions based on the aggravated assault that [Terry] committed on [him] the night prior to the shooting.” Smith concludes that the circuit court erred in “failing to grant the jury the opportunity to consider this theory of the defense.”
¶ 16. The State responds and reiterates that the circuit court instructed the jury that it could find Smith guilty of the lesser-included offense of manslaughter. Additionally, there was no evidence that at the time of the shooting, Smith was resisting Terry’s attempt to commit a felony or any other unlawful act. Instead, the evidence indicated that Terry was sitting in his car, with his three-year-old son in the back seat, and that Terry did not do anything unlawful before Smith shot him. As previously mentioned, the circuit court may refuse an instruction that “is without foundation in the evidence.” Higgins, 725 So.2d at 223(¶ 15). It follows that we find no merit to this issue.
III. SELF-DEFENSE INSTRUCTIONS
¶ 17. Smith submitted seven proposed jury instructions that discussed self-defense. According to Smith, the circuit court erred when it denied those instructions. On appeal, Smith claims that he was entitled to his proposed self-defense instructions because: (1) Terry was “ruthless” and “big, tall[,] and violent”; (2) Terry attacked Latoya; (3) Terry threatened Smith the night before Smith shot Terry; *174 and (4) Terry hit Smith with a pistol the night before Smith shot Terry. Smith concludes that Terry’s behavior placed Smith in reasonable fear of his life and that he had the right to anticipate Terry’s “actions” the next morning. Smith argues that the jury should have been allowed to consider self-defense as a defense.
¶ 18. “It is well-settled that a defendant is entitled to a jury instruction on self-defense when it is warranted by the evidence.” Williams v. State, 803 So.2d 1159, 1161(¶ 6) (Miss.2001). Even considering the evidence in the light most favorable to Smith, Smith never saw Terry with a weapon before he shot Terry. Smith testified that Terry was “reaching for something.” Smith also testified that, although he had “seen [Terry with a pistol] the night before,” he did not testify that he saw Terry in possession of a weapon when he shot him.
¶ 19. Moreover, the circuit court granted instruction S-5, which stated as follows:
The Court instructs the jury that to make an assault justifiable on the grounds of self-defense, the danger to the Defendant must be either actual, present and urgent, or the Defendant must have reasonable grounds to apprehend a design on the part of the victim to assault him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the Defendant acts. If the State has failed to prove, beyond a reasonable doubt, that the Defendant did not act in self-defense as defined in this instruction, you shall find the Defendant not guilty.
Clearly, the circuit court instructed the jury that it was to find Smith not guilty if it concluded that Smith acted in self-defense. Smith’s proposed self-defense instructions were superfluous. “[I]f the jury is fully and fairly instructed by other instructions[,] the refusal of any similar instruction does not constitute reversible error.” Laney, 486 So.2d at 1246. We find no merit to this issue.
¶ 20. THE JUDGMENT OF THE OKTIBBEHA COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO OKTIB-BEHA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ, CONCUR. MAXWELL, J., NOT PARTICIPATING.