# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-01111-COA

**JACKQUAN BAKER A/K/A JAQUAN BAKER**  **APPELLANT**
**A/K/A JACKWON BAKER**

**v.**

**STATE OF MISSISSIPPI**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/28/2023 |
| TRIAL JUDGE: | HON. ALAN D. LANCASTER |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KATY TAYLOR SARVER |
| DISTRICT ATTORNEY: | WILLIAM ADAM HOPPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/14/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Jackquan Baker was charged with aggravated assault after shooting LeeKedrick Moore in a Walmart parking lot.  Baker rejected a plea deal from the State, and the case proceeded to trial.  At trial, Baker's theory of the case hinged upon his actions being in self-defense rather than him being the initial aggressor.  Baker proposed a self-defense jury instruction.  The trial judge found no evidence had been presented to support a theory of self-defense and refused to give the proposed instruction.  At the conclusion of his trial, Baker was found guilty of aggravated assault and sentenced to serve twenty years in the custody of the Mississippi Department of Corrections.  He now appeals, asserting that the self-defense

instruction was refused in error. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2. On June 15, 2020, LeeKedrick Moore went to the Walmart located on Sunset Drive in Grenada County, Mississippi, to assist his pregnant stepsister with groceries. Moore arrived as a passenger in Darion Woodley's Toyota Camry. Upon exiting the vehicle, Moore heard his name being yelled from across the parking lot, but he ignored it. However, after hearing his name yelled a second time, Moore looked to see two men coming toward him with weapons. He was able to identify them as Anthony Spearman and Jackquan Baker. As they approached, Spearman and Baker drew guns and began shooting at Moore. Moore was carrying his own gun and began firing back at them. Moore noticed he had been hit and made his way to the front entrance of the Walmart, ending the confrontation. Moore was shot in the right foot as a result of the event. Baker was also shot by Moore in the skirmish.

¶3. On December 9, 2021, Baker and Spearman were indicted for aggravated assault by a Grenada County grand jury. Baker refused a plea deal from the State and elected to have a trial by jury; Spearman did the same. Prior to the trial, Baker and Spearman made motions for their appointed counsel to withdraw and allow them to obtain privately retained lawyers for their representation. The trial court denied the motions. Baker's trial was held on August 1, 2023.

¶4. The State first called Moore to testify. He testified that he was going to assist his pregnant stepsister with the "transfer from the inside to the outside" after she purchased items from the store. He arrived with Woodley in a "white Toyota Camry" and "parked in . . . one

2

of the middle aisles . . . where they put the shopping carts[.]" At the time, Moore had just finished playing basketball and was wearing "kind of some short shorts[.]" He asked Woodley if he had another pair of pants he could borrow before they went into the store. Woodley turned off the car and retrieved "joggers out of the trunk."

¶5.     As Moore was putting on the joggers, he "heard [his] name in the distance" twice and then "looked to [his] left" to "see two guys coming at [him] with guns." He identified those two men as Spearman and Baker. Moore testified that he "[n]ever noticed them" in the parking lot until then. Moore "reach[ed] into [his] pocket and . . . started to . . . get into the position to defend [him]self." The two men "had the[] [guns] out[,] . . . [a]nd then they proceeded to draw them and shoot." Moore "started shooting back." He "noticed [he] had got hit" and thus "moved around to get more coverage" while Spearman and Baker were "charging at [him]." Moore "proceeded to go into Wal-Mart" but "never went all the way . . . inside." He "only stayed in the front entrance."

¶6.     After that, Moore testified, the authorities and paramedics arrived. Moore sustained a gunshot wound to his right foot. Moore also stated that he only fired two shots, and one of those shots hit Baker. Moore "was shooting a 9 millimeter and when the doctor removed the bullet from [his] foot [at] the hospital, [Moore] asked him what caliber that bullet was[.]" He stated the doctor told him "it was a 45." On cross-examination, the defense proceeded with questions concerning their theory of self-defense. Counsel for Baker and Spearman attempted to have Moore admit that he was the initial aggressor and that he also shot himself in the foot. Moore repeatedly denied both lines of questioning.

3

¶7.     The State also called Kathy Duncan, an employee of the Grenada Walmart, to testify. Duncan stated that at the time of the incident, Walmart had a recording camera surveillance system. The cameras "pretty much entail[ed] the entirety of the store" along with "cameras that are on the roof that go all the way around the store" with views of the parking lot. Duncan was not present at the store when the shooting occurred but was made aware and reviewed the surveillance recordings. Those recordings were burned onto a disc and played for the jury. In short, the videos corroborated much of Moore's version of the sequence of events.

¶8.     The State then rested its case-in-chief. The defense for Baker presented no witnesses or evidence. When reviewing proposed jury instructions, the State objected to a proposed self-defense instruction from the defense. The State argued that there had been "absolutely no testimony that self defense played a role in this at all." The defense disagreed, contending that the evidence presented was enough to "call into question" whether Moore or Baker and Spearman were "the initial aggressor[s]." The court refused the instruction, stating that while self-defense was a valid defense in this case, there had been no "evidence that the jury could consider that either of the defendants were acting in self-defense." The issue came up again later in the jury instruction conference, and the defense argued the fact that Baker was shot was evidence of self-defense. The court again disagreed and refused the instruction.

¶9.     At the conclusion of the trial, both Baker and Spearman were found guilty of aggravated assault. The trial judge sentenced Baker to serve twenty years in the custody of the Mississippi Department of Corrections. On August 29, 2023, Baker filed a motion for

a new trial. The trial judge denied the motion on September 19, 2023. On October 6, 2023, Baker filed a notice of appeal.

**ANALYSIS**

¶10. On appeal, Baker argues that the trial judge erroneously refused the proposed self-defense instruction. This Court employs an abuse-of-discretion standard when reviewing challenges to jury instructions in this context. *Littleton v. State*, 390 So. 3d 516, 525 (¶34) (Miss. Ct. App. 2024) (citing *Baker v. State*, 315 So. 3d 558, 563 (¶13) (Miss. Ct. App. 2021)). In other words, "[j]ury instructions are generally within the discretion of the trial court and the settled standard of review is abuse of discretion." *Figueroa v. State*, 337 So. 3d 1104, 1110 (¶19) (Miss. Ct. App. 2021) (quoting *Nelson v. State*, 284 So. 3d 711, 716 (¶18) (Miss. 2019)).

¶11. Baker relied entirely on a theory of self-defense in order to prove his innocence, both at trial and within his appellant's brief. The instruction Baker proposed at trial stated:

> In order for [] JACKQUAN BAKER to have acted in self-defense, he must (1) have believed that he was in actual danger; (2) have reasonably believed that Le[e]Ke[]drick Moore intended to kill him; or (3) have reasonably believed that Le[e]Ke[d]rick Moore intended to cause great bodily harm to him and that JACKQUAN BAKER reasonably believed that Le[e]Kedrick was about to carry out his actions against him. JACKQUAN BAKER does not have to prove that he acted in self-defense. The State has the burden of proving beyond a reasonable doubt that JACKQUAN BAKER did not act in self-defense. If you find that the State did not prove beyond a reasonable doubt that JACKQUAN BAKER did not act in self-defense, then you shall find JAC[K]QUAN BAKER not guilty of aggravated assault.

"When considering whether to give a jury instruction, the trial courts are tasked with considering the evidence before them at the time they considered the issue of whether to give

5

or refuse the instruction." *Johnsey v. State*, 296 So. 3d 93, 96 (¶9) (Miss. Ct. App. 2019) (quoting *Jackson v. State*, 90 So. 3d 597, 606 (¶36) (Miss. 2012)). Here, the jury instruction conference took place at the close of the State's case-in-chief. Before the trial judge began the conference, both Baker and Spearman indicated they would not testify in their own defenses. Defense counsel also made the trial judge aware that they would call no additional witnesses, offer no evidence, and would rest as soon as the jury returned to the courtroom. The only evidence in the record before the trial court when it considered the proposed instructions was from the State's case-in-chief.

¶12.    "Mississippi law provides that every accused has a fundamental right to have their theory of the case presented to a jury, even if the evidence is **minimal**." *Nelson*, 284 So. 3d at 718 (¶26) (emphasis added) (quoting *Chinn v. State*, 958 So. 2d 1223, 1225 (Miss. 2007)). However, that right "is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, **or is without foundation in the evidence**." *Thomas v. State*, 145 So. 3d 687, 690 (¶17) (Miss. Ct. App. 2013) (emphasis added) (quoting *Spires v. State*, 10 So. 3d 477, 483 (¶28) (Miss. 2009)). The trial court in this case did not reject the proposed instruction for being incorrect or cumulative. The entire exchange between Baker's counsel and the court instead focused on whether any evidence supported a self-defense instruction.[1]  "A defendant is **entitled** to a jury instruction on self-defense when it is warranted **by the evidence**." *Smith v. State*, 76 So. 3d 170, 174 (Miss. Ct. App. 2009), *as corrected* (Miss. Ct. App. Dec. 16, 2011) (emphasis added)

---

[1] Thus, we do not analyze whether the instruction was erroneous or cumulative and proceed with an analysis of whether the evidence supported such an instruction.

(quoting *Williams v. State*, 803 So. 2d 1159, 1161(¶6) (Miss. 2001)). The trial judge needed only minimal evidence to support granting a self-defense instruction.

¶13. Baker's proposed self-defense instruction was rejected because the judge "had not heard any evidence that the jury could consider that either of the defendants were acting in self-defense." *See Willis v. State*, 352 So. 3d 602, 615-17 (¶¶38-40) (Miss. 2022) (finding no abuse of discretion in trial court's denial of self-defense instruction); *Brown v. State*, 222 So. 3d 302, 309 (¶34) (Miss. 2017) (holding an "imperfect self-defense instruction was without foundation" and the trial court abused its discretion by giving the instruction); *Morgan v. State*, 117 So. 3d 619, 623-24 (¶¶14-18) (Miss. 2013) (finding no abuse of discretion by refusing imperfect self-defense instruction "because the requested instruction was without foundation in the evidence"); *Roberson v. State*, 838 So. 2d 298, 304 (¶22) (Miss. Ct. App. 2002) (refusing self-defense instruction when "[t]here was no testimony or evidence of self-defense" at trial).

¶14. No evidence supported a self-defense jury instruction. While Baker's defense counsel cross-examined Moore with questions aimed at getting him to admit he was the initial aggressor, Moore was consistent with his retelling of the events and insisted that Baker and Spearman had initiated the encounter. The video that was introduced also corroborated Moore's testimony and did not support self-defense. Neither Baker nor Spearman testified in their own defense in order to put forth any theory of self-defense even though such testimony on its own could have been sufficient to justify a self-defense instruction. *See Banyard v. State*, 47 So. 3d 676, 681 (¶12) (Miss. 2010) ("A criminal defendant is entitled

7

to have his jury instructed on all offenses of which an evidentiary basis exists in the record, even where the evidence arises only in the defendant's own testimony." (quoting *West v. State*, 725 So. 2d 872, 888 (Miss. 1998), *overruled on other grounds by Wilson v. State*, 194 So. 3d 855, 867 (¶41) (Miss. 2016))).

¶15.    Later in the conference, the judge even allowed defense counsel to argue again "why [he] should reconsider [his] denial" of the self-defense instruction. At this point, counsel for Baker argued that self-defense was evident because "Mr. Baker was shot." The trial judge refused the instruction again, stating that Baker's being shot was not evidence of self-defense and Moore's testimony had clearly explained that he did not begin the confrontation. The judge also noted that Moore's account of the events "was supported by the video of it." This Court cannot find that the trial judge abused his discretion in refusing to give the self-defense instruction.

## CONCLUSION

¶16.    This Court finds no abuse of discretion in the trial court's refusal of the proposed self-defense instruction, as "[a] trial judge properly refuses a requested instruction that is not supported by the evidence." *Figueroa*, 337 So. 3d at 1110 (¶19) (citing *Nelson*, 284 So. 3d at 716 (¶18)). Therefore, we affirm.

¶17.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. ST. PÉ, J., NOT PARTICIPATING.**