# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KA-00921-SCT

*JOSEPH SCOTT MONTANA*

*v.*

*STATE OF MISSISSIPPI*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 5/4/2000 |
| TRIAL JUDGE: | HON. ROBERT H. WALKER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | HERMAN F. COX |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED-07/25/2002 |
| MOTION FOR REHEARING FILED: | 05/21/2002 |
| MANDATE ISSUED: | 8/15/2002 |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is denied. The original opinion is withdrawn, and this opinion is substituted therefor.

¶2. Joseph Scott Montana appeals to this Court from the Circuit Court of Harrison County where he was convicted of murder pursuant to Miss. Code Ann. § 97-3-19(1)(b) (2000). Montana was sentenced to a term of life imprisonment in the custody of the Mississippi Department of Corrections. Finding no reversible error in the proceedings below, we affirm Montana's conviction and sentence.

## FACTS

¶3. On the evening of April 4, 1999, Kristen Stachura was having a "get-together" of several friends at her

parents home in Gulfport while her parents were out of town. Among those in attendance were Joseph Montana, David Rogers, Geena Guidry, Patrick Bradley, Taylor Foster, Osama Darwish, and Kristen Stachura. Later that night, a group of uninvited people arrived at the Stachura residence, including Jennifer Davis, Taylor Freeman, Sean Johnson, Jill North, Michael Harrington, Charles Loftin, Lee Martin, and Alicia Onlee.

¶4. The uninvited group, some of whom were wearing gang colors, apparently came to the Stachura residence because of prior disagreements between Stachura and Jennifer Davis. After the second group arrived, an altercation occurred between Stachura and Davis. Afterward, another altercation occurred between Osama Darwish and Davis's boyfriend, Lee Martin. After the fights were over, the second, uninvited group left.

¶5. After leaving, members of the second group placed threatening telephone calls to the Stachura residence, including threats of a drive-by shooting. Later, numerous individuals, including Rashad Holloway, returned to the Stachura residence in three vehicles - a minivan, a Honda prelude, and a Bronco - for a second altercation.

¶6. Stachura's guests were on the front porch when the interlopers returned. At least one, Lee Martin, was carrying a baseball bat. Some individuals were carrying some type of sticks and were yelling threats at Darwish. While Darwish and Martin argued, another skirmish broke out. At some point during the second altercation, Montana retrieved his 9 mm pistol, which he had placed in Stachura's vehicle.

¶7. Also during this time, four members of the uninvited group, Jennifer Davis, Chris Hairston, Rashad Holloway, and an unidentified black male entered the Stachura residence. Someone grabbed Stachura's wrist, and she screamed. Montana then yelled for them to get out, and they left, with Montana following them out. Montana, standing on the porch, fired approximately three shots into the air.

¶8. Chris Hairston, Sean Johnson, the unidentified man, and Rashad Holloway ran to the minivan and began to drive away. Hairston was driving, Johnson was in the passenger seat, and Holloway and the unidentified man were in the back seat. As the van was leaving, some witnesses testified to hearing one or two additional shots, but they did not see who fired them or from where the were fired, save Hairston, who testified that he looked back and saw Montana point the gun at the minivan. Hairston and Johnson testified that as they were pulling away from the Stachura residence, they heard two additional shots and that the window of the minivan shattered. Holloway received a fatal gunshot wound to the head. A 9 mm bullet was recovered from Holloway's body, but could not be conclusively matched to the pistol that Montana fired.

¶9. Montana was convicted of murder pursuant to Miss. Code Ann. § 97-3-19(1)(b) on May 4, 2000, and was sentenced to a term of life imprisonment in the custody of the Mississippi Department of Corrections. The trial court denied Montana's Motion for Judgment Notwithstanding the Verdict or, in the alternative, for New Trial. Montana timely filed a notice of appeal to this Court. He asserts the following errors:

    **I. THE TRIAL COURT ERRED IN GRANTING INSTRUCTION S-4A.**

    **II. THE TRIAL COURT ERRED IN GRANTING INSTRUCTION S-10A.**

    **III. THE TRIAL COURT ERRED IN REFUSING TO GRANT INSTRUCTION D-31.**

    **IV. THE TRIAL COURT ERRED IN REFUSING TO GRANT INSTRUCTIONS D-24**

**AND D-25.**

**V. THE TRIAL COURT ERRED IN OVERRULING MONTANA'S DEMURRER TO THE INDICTMENT.**

**VI. THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE A FALSE POLICE REPORT THAT MONTANA FILED REGARDING THE THEFT OF A WEAPON FROM HIS FATHER'S VEHICLE.**

**VII. THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE THE .380 PISTOL, MAGAZINE AND AMMUNITION FOUND PURSUANT TO A SEARCH OF MONTANA'S BEDROOM.**

**VIII. THE TRIAL COURT ERRED IN REFUSING TO GRANT JURY INSTRUCTIONS D-8, D-9, AND D-20.**

**IX. THE TRIAL COURT ERRED IN GRANTING INSTRUCTION S-2A.**

**X. THE VERDICT OF THE JURY WAS CONTRARY TO THE OVERWHELMING WEIGHT AND SUFFICIENCY OF THE EVIDENCE.**

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN GRANTING INSTRUCTION S-4A.

¶10. In reviewing a challenge to jury instructions, the instructions actually given must be read as a whole. *Williams v. State*, 803 So. 2d 1159, 1161 (Miss. 2001) (citing *Hickombottom v. State*, 409 So. 2d 1337, 1339 (Miss. 1982)). When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Id.*

¶11. Montana, relying on *Reddix v. State*, 731 So. 2d 591 (Miss. 1999), argues that instruction S-4A was defective and incomplete because it failed to instruct the jury that it was bound to acquit Montana of the charge if the jury believed he acted in self defense. Instruction S-4A stated as follows:

> The court instructs the jury that to make an assault justifiable on the grounds of self-defense, the danger to the defendant or others must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or others or to do him or others some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.

¶12. Montana objected to instruction S-4A at trial on an entirely different basis than that raised on appeal. We have stated that asserting grounds for an objection on appeal that differs from the ground given for the objection at trial does not properly preserve the objection for appellate review. However, assuming arguendo that *Reddix* requires us to review such an omission as plain error, we find no such error in the case below. *See id.* at 592 (stating that it is fundamental error to improperly instruct the jury with regard to the essential elements of the crime).

¶13. The instructions granted in this case are essentially those recently approved by this Court in *Williams*

*v. State*, 803 So. 2d 1159 (Miss. 2001). Accordingly, we find that the jury was properly instructed as to the State's burden to disprove Montana's claim of self-defense as well as its obligation should it find Montana acted in self-defense.

¶14. Instruction S-4A set forth the elements of self-defense. It is the same instruction recommended by this Court in ***Robinson v. State***, 434 So. 2d 206, 207 (Miss. 1983)(overruled on other grounds. ***Flowers v. State***, 473 So. 2d 164, 165 (Miss. 1985) and the same as instruction S-7 given in ***Williams***. *See* ***Williams***, 803 So. 2d at 1161. As we observed in ***Williams***, this instruction has been consistently held to be a proper instruction on self-defense. ***Id.*** at 1162 (citing ***Cohen v. State***, 732 So. 2d 867 (Miss. 1998); ***Gossett v. State***, 660 So. 2d 1285, 1295 (Miss. 1995)). However, in ***Reddix v. State***, 731 So. 2d at 595, this Court held that the ***Robinson*** instruction did not "sufficiently treat the subject of self-defense" because it failed to alert the jury to its duty to acquit if it believed the theory of self-defense.

¶15. Nevertheless, in addition to the ***Robinson*** instruction, the jury below was given instruction S-2A, which stated:

> The Court instructs the jury that if you find from the evidence in this case beyond a reasonable doubt that:
>
> ********
>
> 4. Joseph Scott Montana was not acting in self-defense, or defense of others, then you shall find the defendant guilty of murder.
>
> If you find that the State has *failed to prove* any more of the essential elements of the crime charged, *you must find the defendant not guilty of murder*. You will then proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all of the elements of the lesser crime of Manslaughter.
>
> If you find from the evidence in this case beyond a reasonable doubt that:
>
> *********
>
> 6. That Joseph Scott Montana was not acting in self-defense, or defense of others then you shall find the defendant guilty of manslaughter.
>
> If the State has *failed to prove* any one or more of the above listed elements beyond a reasonable doubt, *then you shall find the defendant not guilty of manslaughter*.

(emphasis added). This is essentially the same instruction approved by this Court in ***Williams***, which provided the jury with the elements of murder, including that "the shooting was not in necessary self-defense." ***Williams***, 803 So. 2d at 1162. We held in ***Williams*** that this language informed the jury that if they found that the killing was in "necessary self-defense" then the elements of the crime were not met. ***Id.*** Likewise, the jury below was further instructed that if the State "failed to prove any one or more of these elements beyond a reasonable doubt" then it should find Montana not guilty. ***Id.***

¶16. Montana's reliance ***Reddix*** is misplaced. As we held in ***Williams***, the problem found in ***Reddix*** is

cured by the instructions given in the case sub judice. This assignment of error is without merit.

## II. THE TRIAL COURT ERRED IN GRANTING INSTRUCTION S-10A.

¶17. Jury instruction S-10A stated as follows:

The Court instructs the jury that a person may not use more force than reasonably appears necessary to save his life or protect himself or others from great bodily harm. The question of whether he was justified in using the weapon is for determination by the jury.

The law tolerates no justification and accepts no excuse for an assault with a deadly weapon on the pleas of self defense except that the assault by the defendant on the victim was necessary or apparently so to protect the defendant's own life or his person or that of others from great bodily injury and there was immediate danger of such design being accomplished. The danger to life or of great personal injury must be or reasonably appears to be imminent, and present at the time the defendant commits the homicide with a deadly weapon. The term "apparent" as used in "apparent danger" means such overt, actual demonstration by conduct and acts of a design to take life or do some great personal injury as would make the homicide apparently necessary to self-preservation.

¶18. Montana complains that this instruction is couched in prosecutorial terms, is peremptory in nature, and contains language which is "totally improper and prejudicial." He further urges that because the instruction speaks of the defendant committing both an assault and a homicide, it is "self-contradictory and confusing." He also states the instruction is in conflict with instruction S-4A.

¶19. Montana does little to develop this argument other than to cite ***Sheppard v. State***, 777 So. 2d 659 (Miss. 2000), ***Reddix v. State***; ***Scott v. State***, 446 So. 2d 580 (Miss. 1984), and ***Smith v. State***, 463 So. 2d 1028 (Miss. 1984), *overruled*, ***Ferrell v. State***, 733 So. 2d 788 (Miss. 1999), and generally state that they apply to this issue. Though each of these cases involved allegations of error regarding self-defense instructions, none of these opinions are applicable to Montana's argument regarding the instruction at issue.

¶20. As discussed in the previous issue, the jury in the case sub judice was adequately instructed on the subject of self defense. Additionally, the defense was granted self-defense instructions D-26, D-27, and D-29. Instruction D-26 instructed the jury that the danger to Montana or others "need not have been actual but only reasonably apparent and imminent, so as to raise a reasonable doubt of his guilty." Instruction D-27, a "no retreat" instruction, stated that Montana need not have avoided the danger to himself or others by flight in order to assert the right to self defense. Instruction D-29 instructed the jury to put themselves in Montana's place in determining whether the danger was apparent, and that the jury must not require of Montana the "same cool judgment."

¶21. Instruction S-10A is not in conflict with S-4A. Montana fails to demonstrate how the jury may have been misled by the use of the words assault or homicide. Considering the five self-defense instructions together, we find that the jury was properly instructed.

## III. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT INSTRUCTION D-31.

¶22. The trial court refused to grant Instruction D-31, which provided:

The Court instructs the jury that if the State has failed to prove any one or more of the elements of murder as set forth in another instruction beyond a reasonable doubt, you shall find the accused, Joseph Scott Montana, not guilty.

Moreover, the accused is not charged with the burden of proving self-defense beyond a reasonable doubt; rather, the State bears the burden of negating the accused's assertion of self-defense beyond a reasonable doubt. If you find that the State has failed to do so, your verdict must be not guilty.

¶23. Montana contends that D-31 was the only instruction which advised the jury that the State was required to prove beyond a reasonable doubt that Montana did not act in self defense before a guilty verdict could be returned. This Court finds that the trial court did not err in refusing this instruction.

¶24. The first sentence of D-31 effectively eliminated manslaughter from the jury's consideration. The instruction is, therefore, in conflict with S-2A, which told the jury that if the State failed to prove the essential elements of murder, it was proceed with deliberations to decide whether the State had proved the elements of manslaughter.

¶25. Neither was the trial judge in error for failing to reform the instruction. As discussed previously regarding Montana's first allegation of error, instruction S-2A instructed the jury that if the State failed to prove Montana did not act in self-defense, it must find Montana "not guilty." That same instruction informed the jury that the State's burden of proof as to the elements of the crime charged, including the determination that Montana was not acting in self defense, was "beyond a reasonable doubt."

¶26. A trial judge is under no obligation to grant redundant instructions. *Ellis v. State*, 790 So. 2d 813, 815 (Miss. 2001) (citing *Bell v. State*, 725 So. 2d 836, 849 (Miss. 1998)). The refusal to grant an instruction which is similar to one already given does not constitute reversible error. *Id.* (citing *Laney v. State*, 486 So. 2d 1242, 1246 (Miss. 1986)). We find no error in the trial court's refusal of Instruction D-31.

### IV. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT INSTRUCTIONS D-24 AND D-25.

¶27. The trial court refused instructions D-24 and D-25, which embodied Montana's theory of excusable homicide. Instruction D-24 told the jury that it must find Montana not guilty if it finds that Montana "in the heat of passion, upon any sudden and sufficient provocation under the circumstances then and there existing, fired the pistol in the air and that one of the rounds fired into the air accidentally and/or through misfortune killed Rashad Holloway." Instruction D-25 told the jury it must find Montana "not guilty" if it finds that "the fatal shot was fired through accident and misfortune at a time when Montana had no unlawful intent toward Rashad Holloway."

¶28. Montana argues that he has presented evidence sufficient to create a jury question on the defense of accident or misfortune pursuant to Miss. Code Ann. § 97-3-17 (2000), which provides:

The killing of any human being by the act, procurement, or omission of another shall be excusable:

(a) When committed by accident and misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent;

(b) When committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation;

(c) When committed upon any sudden combat, without undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel or unusual manner.

¶29. Instruction D-24 stated a defense pursuant to subsection (b) of the above statute, and D-25 stated a defense pursuant to subsection (a). A defendant is entitled to jury instructions on his theory of the case whenever there is evidence that would support a jury's finding on that theory. *Jackson v. State*, 645 So. 2d 921, 924 (Miss. 1994). However, Montana presented no evidence to support a defense under either subsection (a) or (b).

¶30. Montana points to his statement to police that he intentionally fired the weapon in the air and did not intend to shoot Holloway. He stated that it was possible that, when he was waving the gun in the air and firing, "my hand might have went a little too far down to the wrong direction.... But I did not intentionally try to shoot or aim at somebody." Montana told police that he never intentionally pointed the gun at the vehicle as it was leaving, but that his hand might have come down as he was firing the rounds. No evidence was presented that any of the shots fired by Montana were accidentally fired, but only that the direction of the bullet was accidental. The trial judge correctly held that because Montana intentionally fired the weapon, he was precluded from receiving the requested instructions.

¶31. Montana relies on *Fears v. State*, No. 97-CT-00558-SCT, 1999 WL 1000670 (Miss. Nov. 4, 1999), apparently as support for both instructions. That opinion was withdrawn by this Court and superseded by *Fears v. State*, 779 So. 2d 1125 (Miss. 2000). Neither version furthers Montana's argument.

¶32. Instruction D-25 asked the jury to find that the fatal *shot was fired* through accident and misfortune. All evidence indicated that Montana intentionally fired the weapon. Also precluding Montana's defense under § 97-3-17(a) is the fact that he fired his weapon within the city limits of Gulfport - an unlawful act. *See Thibodeaux v. State*, 652 So. 2d 153, 167 (Miss. 1995) (holding that headlighting deer is an unlawful act rendering § 97-3-17(a) unavailable as a defense).

¶33. A defense under § 97-3-17(b) is likewise unavailable to Montana. Again, all evidence demonstrated that each shot fired by Montana was intentionally fired. An intentional act cannot fit the doctrine of accident or misfortune. *See Triplett v. State*, 666 So. 2d 1356, 1362 (Miss. 1995) (defendant was entitled to accident or misfortune instruction only where evidence showed there was no intent on his part to fire the fatal shot).

¶34. Our opinion in *Evans v. State*, 797 So. 2d 811 (Miss. 2000), is instructive. In that case, the defendant, Evans, was involved in a bar brawl in which he fired a gun, killing Bunton, who was standing directly in front of Evans at the time. Evans denied knowingly shooting Bunton, and explained that he intended only to fired the gun straight up in the air in an attempt to get the patrons to disperse. *Id.* at 813. Evans claimed, that the gun accidentally went off when he was raising it to point it up in the air. *Id.* at n.1. This Court found that Evans was entitled to have his theory, supported by § 97-3-17(b), presented to the jury. 797 So. 2d at 814-15. Likewise, in *Day v. State*, 589 So. 2d 637 (Miss. 1991), the defendant, Day, testified that he intended to fire a shot into the air in order to scare the victim off, but while attempting to disengage the gun's safety, the weapon accidentally fired in the victim's direction, fatally striking him. We

held that the evidence "support[ed] Day's contention that the actual firing was accidental." *Id.* at 642.

¶35. The crucial distinction between *Evans* and *Day*, on the one hand, and the case sub judice, on the other, is that there was evidence in *Evans* and *Day* that the firing of the weapon was accidental. There was absolutely no such evidence presented in the case at bar. Rather, Montana's statement indicates that each and every shot fired from his weapon was intentional. The trial court correctly held that an intentional act cannot be excused under the doctrine of accident and misfortune. Denying the requested instructions was not error.

## V. WHETHER THE TRIAL COURT ERRED IN OVERRULING MONTANA'S DEMURRER TO THE INDICTMENT.

¶36. Montana was indicted under Miss. Code Ann. § 97-3-19(1)(b), which provides:

> (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:
>
> *****
>
> (b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual.

¶37. The indictment against Montana tracked the statutory language of § 97-3-19(b), but omitted the words "although without any premeditated design to effect the death of any particular individual." The indictment charged:

> That JOSEPH SCOTT MONTANA ... on or about April 5, 1999, did wilfully, feloniously and without the authority of law kill and murder Rashad Holloway, a human being, while he, the said Joseph Scott Montana, was engaged in the commission of shooting into an occupied vehicle with a pistol, an act eminently dangerous to others and evincing a depraved heart, regardless of human life, ..."

¶38. Montana filed a demurrer to the indictment, arguing lack of premeditated design is an essential element, the omission of which renders the indictment fatally flawed. On appeal, Montana contends that the trial court erred in overruling the demurrer.

¶39. This argument is without merit. Though it is a well-established principle of law that to be sufficient an indictment must contain the essential elements of the crime charged, the lack of premeditated design is not an essential element of the offense of depraved-heart murder. Stated otherwise, the State is not required to prove lack of premeditated design in order to convict a defendant pursuant to § 97-3-19(1)(b).

¶40. As provided in Rule 7.06 of the Uniform Circuit and County Court Rules, an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them." The indictment against Montana tracks the language of § 97-3-19(1)(b), states the essential facts, and fully notified him of the nature and cause of the accusation. We find no error in the trial court's determination to overrule the

demurrer.

## VI. WHETHER THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE A FALSE POLICE REPORT THAT MONTANA FILED REGARDING THE THEFT OF A WEAPON FROM HIS FATHER'S VEHICLE.

¶41. Approximately five hours after firing the pistol at the Stachura residence, Montana filed a false police report claiming that his father's truck had been burglarized and that some tools and the 9mm pistol had been stolen. After his arrest, Montana gave a statement wherein he admitted filing the fraudulent police report and said he did so because he was scared. He also acknowledged that the pistol he claimed was stolen was the same one he fired at the Stachura residence. Montana attempted to exclude this evidence in his motion in limine, wherein he argued that its prejudicial effect would outweigh its probative value.

¶42. Generally, evidence of a crime other than that charged in the indictment is not admissible evidence against the accused. *Duplantis v. State*, 644 So. 2d 1235, 1246 (Miss. 1994); *Ladner v. State*, 584 So. 2d 743, 758 (Miss. 1991). Miss. R. Evid. 404(a) provides that generally, "[e]vidence of a person's character or a trait of his character is not admissible for the purpose that he acted in conformity therewith on a particular occasion...." The prosecution claimed that the evidence at issue falls within an exception to the rule pursuant to Rule 404(b) wherein "[e]vidence of other crimes is ... admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." At the hearing on Montana's motion in limine, the prosecution argued that this evidence was relevant to show knowledge and lack of mistake or accident. Defense counsel stated that Montana intended to advance theories of self-defense and accident or misfortune at trial.

¶43. The trial judge accepted the State's argument that the evidence was relevant to rebut Montana's claim of lack of mistake or accident. The judge opined that the probative value of the evidence outweighed its prejudicial effect, as required by Rule 403, and then admitted it pursuant to Rule 404(b).

¶44. Whether to admit evidence pursuant to the Rule 403 balancing test is within the discretion of the trial judge, and this Court will not engage anew in such a determination. *Williams v. State*, 543 So. 2d 665, 667 (Miss. 1989), *Foster v. State*, 508 So. 2d 1111, 1117-18 (Miss.1987),(*overruled on other grounds*, *Powell v. State*, 806 So. 2d 1069, 1080 (Miss. 2001). The evidence at issue was relevant to show knowledge and absence of mistake or accident. We cannot said the trial judge abused his discretion in finding that probative value of this evidence outweighed its prejudicial effect.

## VII. WHETHER THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE THE .380 PISTOL, MAGAZINE AND AMMUNITION FOUND PURSUANT TO A SEARCH OF MONTANA'S BEDROOM.

¶45. The evidence is undisputed that the weapon that Montana fired on the night in question was a 9mm pistol and that the pistol in custody was the one he fired. The State's firearms expert, Starks Hathcock, testified that 9 mm shell casings were recovered from the scene, and no .380 shell casings were found. He further testified that, while a .380 round could be fired from a 9 mm pistol, a 9 mm round could not be fired through a .380 pistol. It is undisputed that the bullet removed from Rashad Holloway was a 9 mm projectile. Therefore, the 9 mm projectile removed from Holloway could not have been fired from the .380 firearm recovered from Montana's bedroom.

¶46. The prosecution argued for the admission of a .380 pistol and magazine containing .380 bullets found in Montana's bedroom based on the following:

> The defense has introduced a .30 caliber weapon, and is going to, as we all are aware, argue that it could have been fired from another, i.e., Chris Hairston's gun. If the jury is permitted, and I think they are, to consider whether or not that's a possibility, they should equally be able to consider whether or not it came from the defendant's .380 firearm.

The court admitted the .380 pistol and magazine, but instructed the prosecution not to mention it unless Montana attempted to argue that Holloway was shot with a .380 caliber weapon.

¶47. This discussion occurred outside the presence of the jury. The possibility of another .380 being used to shoot Holloway was never argued by Montana, and the exhibit was never mentioned again. Montana has failed to show that he was prejudiced by the trial court's admission of the evidence. Before error can be predicated on an adverse evidentiary ruling, the admission or exclusion of evidence must result in prejudice or harm. *Austin v. State*, 784 So. 2d 186, 194 (Miss. 2001) (citing *Parker v. State*, 606 So. 2d 1132, 1137-38 (Miss.1992)); *Jackson v. State*, 594 So. 2d 20, 25 (Miss. 1992). Any error in the admission of the exhibit was harmless. This assignment of error is without merit.

## VIII. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT JURY INSTRUCTIONS D-8, D-9, AND D-20.

¶48. Montana maintains that all evidence offered against him was circumstantial and that the trial court erred in refusing to grant instructions D-8, D-9, and D-20, all circumstantial evidence instructions.

¶49. Circumstantial evidence instructions are required where all evidence of the crime is entirely circumstantial. *Jones v. State*, 797 So. 2d 922, 929 (Miss. 2001); *Givens v. State*, 618 So. 2d 1313, 1320 (Miss. 1993). Contrary to Montana's assertions, not all of the evidence offered by the prosecution was circumstantial. It is undisputed that Montana fired a 9mm pistol approximately five times in front of the Stachura residence. It is also undisputed that Holloway was killed by a 9mm projectile. Though the State's expert could not conclusively say that the bullet taken from Holloway's body came from Montana's gun, Chris Hairston testified that he saw Montana point the pistol at the van, that he heard two shots, and that two windows in the van were broken out.

¶50. Montana argues that none of the nearly two dozen witnesses saw Montana point the gun at the van and that several contradicted the testimony of Hairston. Montana observes that Hairston's testimony was "highly suspect" in that only one window was actually broken out on the van, Hairston refused to cooperate with police and had to be taken into custody to be interviewed, and Hairston originally told investigators that approximately seventeen shots were fired.

¶51. It is the role of the jury to evaluate the veracity of witnesses. *Wetz v. State*, 503 So. 2d 803, 812 (Miss. 1987). Though the testimony of the witnesses was conflicting and of questionable credibility, the jury's verdict was based on direct evidence. It is the jury's province to resolve such conflicts, and the jury is free to accept the testimony of some witnesses and reject that of others, in whole or in part. *Evans v. State*, 725 So. 2d 613, 680-81 (Miss. 1997) (citing *Ivey v. State*, 206 Miss. 734, 40 So. 2d 609, 613 (1949)). The trial court did not err in refusing the requested instructions.

## IX. WHETHER THE TRIAL COURT ERRED IN GRANTING INSTRUCTION S-2A.

¶52. Instruction S-2A provided as follows:

The Court instructs the jury that if you find from the evidence in this case beyond a reasonable doubt that:

1. Joseph Scott Montana, on or about April 5, 1999, in the First Judicial District of Harrison County, Mississippi,

2. killed Rashad Holloway,

3. by shooting him in the head, at a time when Joseph Scott Montana was committing an act extremely dangerous to others and evidencing a depraved heart, regardless of human life, and further that

4. Joseph Scott Montana was not acting in self-defense, or defense of others then you shall find the defendant guilty of murder.

If you find that the State has failed to prove any more of the essential elements of the crime charged, you must find the defendant not guilty of murder. You will then proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all of the elements of the lesser crime of Manslaughter.

If you find from the evidence in this case beyond a reasonable doubt that:

1. JOSEPH SCOTT MONTANA, on or about April 5, 1999, in the First Judicial District of Harrison County, Mississippi,

2. killed Rashad Holloway,

3. by shooting him in the head, and

4. JOSEPH SCOTT MONTANA was negligent and the negligence was so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life, and

5. such negligence, if any, directly caused the death of Rashad Holloway, and further,

6. that JOSEPH SCOTT MONTANA was not acting in self-defense, or defense of others

then you shall find the defendant guilty of manslaughter.

If the State has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find the defendant not guilty of manslaughter.

¶53. Montana first argues that this Instruction S-2A is defective in failing to set forth the burden of proof required in a circumstantial evidence case. For the reasons outlined in the previous issue, this argument lacks merit.

¶54. Montana also argues that the instruction is deficient in failing to include the statutory language "although without any premeditated design to effect the death of any particular individual." This is argument is identical

to that addressed in Issue V, and it fails for the reasons discussed therein.

¶55. Montana additionally complains that "depraved heart" is not defined in the murder portion of the instruction and that "negligence" and "gross negligence" are not defined in the manslaughter portion of the instruction. This argument is without merit. The instruction speaks of a depraved heart as a disregard for human life. The instruction also states that the negligence required was "gross" negligence, which was properly defined as conduct "so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life."

¶56. Finally, Montana argues that the instruction fails to include the defense of accident or misfortune. This argument was rejected in Issue IV.

### X. WHETHER THE VERDICT OF THE JURY WAS CONTRARY TO THE OVERWHELMING WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

¶57. Though Montana blurs the distinction between "sufficiency" and "weight of the evidence," he apparently argues that the trial court erred in denying his motion for jnov or, in the alternative for new trial.

### a. Sufficiency of the Evidence

¶58. A motion for jnov challenges the legal sufficiency of the evidence. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). This Court will consider the evidence in the light most favorable to the State, giving the State the benefit of all favorable inference that may be reasonably drawn from the evidence. *Coleman v. State*, 697 So. 2d 777, 787-88 (Miss. 1997). We are authorized to reverse only where the facts so considered point so overwhelmingly in favor of the Montana that reasonable men could not have arrived at a contrary verdict. *Id.*

¶59. A review of the record before this Court does not reveal that it was so wanting for evidence that Montana was entitled to a judgment notwithstanding the verdict. We find the following evidence sufficient to warrant the trial court's refusal of Montana's motion for jnov. Montana admits that he fired a 9 mm pistol. It is undisputed that Holloway was killed by a 9 mm projectile. Although the bullet could not be conclusively linked to Montana's gun, Chris Hairston, who was in the driver's seat, testified that after the initial three-round burst of gunfire, he looked back and saw Montana point the gun at the minivan and that he then heard two additional shots and two windows breaking. Montana told law enforcement that to his knowledge no one else fired a single shot at the location of the crime, and no evidence was offered indicating that anyone else fired a weapon.

¶60. Montana argues that Hairston's testimony lacked credibility. Montana also points to conflicts in the testimony of various witnesses as to how the window in the back of the minivan was broken. Detective Steve Schlicht testified that he arrived at Stachura's residence around 1:45 A.M., and that he observed broken glass in the street just west of the driveway. On cross-examination, Schlicht admitted that he had no knowledge of whether that glass had been there prior to the shooting, and that to his knowledge no comparative tests were done to match the glass in the road to the minivan. As discussed previously, the veracity of witnesses and conflict in the testimony is for the jury to resolve. *Evans v. State*, 725 So. 2d at 680-81; *Wetz v. State*, 503 So. 2d at 812. The trial court did not err in denying Montana's motion for jnov.

### b. Weight of the Evidence

¶61. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. ***Dudley v. State***, 719 So. 2d 180, 182 (Miss. 1998) (collecting authorities). Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. ***Id.***

¶62. Though the evidence at trial was conflicting, we find that the verdict was not so contrary to the overwhelming weight of the evidence that we must order a new trial. There was certainly evidence of such weight and quality to support the jury's verdict and its rejection of the theory that the only shots fired by Montana were three shots fired into the air for the purpose of scaring the interlopers.

¶63. Montana told police in his statement that he fired approximately five rounds with a 9mm pistol. All witnesses testified to hearing the first volley of shots. Hairston testified that there was a second round of gunfire after he and his companions scurried into their vehicles and attempted to leave the scene. This testimony is corroborated by that of Sean Johnson, who was in the passenger seat of the minivan, and that of Michael Herrington and Jennifer Davis, who were in the other two vehicles fleeing the scene. Patrick Bradley testified that he saw Montana fire three shots into the air, and that, after Bradley had run into the house, he heard two more shots fired. Sean Johnson's testimony that when the second round of shots was fired, the window of the minivan broke is consistent with Hairston's account. Again, while there was no conclusive proof shown that the glass in the roadway was from the minivan, its presence in the roadway certainly lends weight to the testimony of what occurred that evening. Holloway was killed by a 9mm bullet. There was no evidence presented that anyone other than Montana fired a weapon at time of the incident in question.

¶64. Other evidence supports Hairston's account of the incident, such as Montana's filing of the false police report; the trajectory of the bullet lodged in Holloway's head; the fact that the bullet which killed Holloway was a 9 mm projectile; and the location of the broken glass 35 to 45 feet down the road.

¶65. We conclude that the jury's verdict was not contrary to the overwhelming weight of the evidence. The trial court did not abuse its discretion in denying Montana's motion for new trial.

## CONCLUSION

¶66. This Court finds no reversible error in the record. All of the issues raised by Montana are without merit. Therefore, the judgment is affirmed.

¶67. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**PITTMAN, C.J., McRAE, P.J., WALLER, COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.**